## PICKERING *v.* SHOTWELL.

Though the objects of a charity are uncertain, a devise will not fail for want of a trustee capable of taking, if a discretionary power of selection is vested anywhere. And such power may be vested in an unincorporated religious association.

A devise of real and personal estate to the Monthly Meeting of Friends of Philadelphia for the Northern District (being an unincorporated religious association), to be applied as a fund for the distribution of good books among poor people in the back part of Pennsylvania, or to the support of an institution or free-school in or near Philadelphia, established against the heirs and representatives of testator, on a bill by certain members of the meeting on behalf of themselves and other members.

| | |
|---|---|
| 10 | 23 |
| 151 | 471 |
| 10 | 23 |
| 201 | 615 |
| 10 | 23 |
| 208 | ² 63 |
| 208 | ² 66 |
| 10 | 23 |
| f218 | 166 |
| f218 | 167 |

APPEAL from the Common Pleas of Philadelphia.

*Jan.* 24. Pickering and two others, on behalf of themselves and all other members of the Monthly Meeting of Friends of Philadelphia for the Northern District, filed a bill, setting forth that one Sheppard died, having made a will, dated in 1800, whereby he gave certain legacies to his children, payable at twenty-one, and the income of his whole estate to the maintenance of his wife and children until they should receive their legacies—remainder to his wife for life; " and from and immediately after her decease, all the said residue of my estate shall go to and be applied, under the direction of the Monthly Meeting of Friends of Philadelphia for the Northern District, as a fund for the distribution of good books among poor people in the back part of Pennsylvania, or to the support of an institution, or free-school, in or near Philadelphia." The bill further stated, that the children of the testator had received their legacies, and that the estate had been appropriated, during the life of the widow, according to the terms of the will; but that, since her death, the defendants, who were children of testator, with their respective husbands, had entered upon the property and received the rents and profits. The bill then prayed an account thereof, and that the said rents and profits and the residue of the real and personal estate of testator should be paid, assigned, and conveyed to trustees to be appointed by the court, to hold for the uses, intents, and purposes in the said will expressed, and for general relief.

The defendants demurred, and for cause alleged, that the devise was void for want of certainty, and was invalid, vague, and of no effect; and that the said Monthly Meeting is unable, by law, to take the said devise or bequest, and to hold and administer the same.

The court overruled the demurrer and declared the trusts valid, and directed an assignment to trustees to be named by the said Monthly Meeting, and to be approved by the court, to be held and applied, under the directions of the said Monthly Meeting, according to the trusts of the will.(a)

*H. M. Phillips* and *Randall*, for appellants..—The devise is void for uncertainty who are to be the trustees, and in the objects of the charity. Where the objects are so uncertain that the estate cannot vest in them, it is essential there should be trustees who can take the legal estate and manage the charity: 3 Raw. 170. The trustee here is an unincorporated body incapable of succession: Co. Litt. 3 a; 10 Rep. 26; Touch. 237; Perk. § 510; 9 Cranch, 43; 9 Wheat. 455–64; 2 John. Ch. 320; 9 John. 73; Green *v.* Dennis, 6 Conn. 292; 8 John. 385. This point was expressly ruled in 1 Penna. 49, where the devise was to an officiating priest and his successors, and still more emphatically in Kirk *v.* King, 3 Barr, 436, where the grant was to the employers of a school. Witman *v.* Lex has a *dictum* the other way; but, in 1 W. 218, and Zimmerman *v.* Anders, 6 W. & S. 218, there were trustees. Were the devise to the meeting for their own benefit, perhaps this would be immaterial; but they are to be trustees, and as such amenable to the court. How can this be when the society is voluntary, unincorporated, and the members perpetually shifting? This was recognised in 4 Wheat. 1, which point was untouched by 2 Howard, 127. In Magill *v.* Brown, the meeting took beneficially. The devise is then clearly void at law, Hob. 136, nor can the court impart to the trustees named the power to take: clearly they cannot be compelled to accept it; nor is it possible for the court to supervise the execution, or call such a body to account.

But it will be said that the court never suffers the trust to fail for want of a trustee. That may be true where the object is one for which a discretionary power of designation is not required, but where that is the case the court has invariably refused to interfere in this state. That is the *cy pres* doctrine, which has been said to be too grossly revolting to the public sense of justice to be tolerated: 1 W. 226. Are then the trusts here too vague? The answer is found in the question, who can apply to have them en-

---

(a) Though not stated on the record, it was assumed at the argument, as a fact, that the Monthly Meeting is an unincorporated religious society composed of members of the Society of Friends residing in the county of Philadelphia, within certain limits known as the Northern District.

forced? What are the good books to be, religious or scientific? This view was sustained in Browne *v.* Yeale, cited in 7 Ves. 50, 19 Ib. 399, and the objection in 10 Ves. 522, was grounded on the *cy pres* doctrine. Again, who are the *poor?* A devise to the poorest relations was held void for uncertainty: 1 Pow. Dev. 365; and when to the poor generally administered *cy pres:* Attorney General *v.* Matthews, 2 Lev. 167; Finch Ch. R. 245. That rule being excluded the devise was void: 6 Har. & John. 1; 5 Ib. 392; 8 S. & R. 43. This uncertainty is rendered still more uncertain by the description of their residence. How is it possible for this court to administer a charity for the poor generally in the back part of Pennsylvania? If then this part of the charity fails, the other goes with it: 6 Ves. 410; 1 Ib. 475; 9 Ves. 399; Amb. 614.

The alternative charity is equally vague; if to an institution already existing, out of the hundreds of schools, which shall receive it? Is it for the erection of an edifice? Of what character will the school be, and who are to be educated there? These must be determined by the court, for the trustee named is incompetent. And if the court determine, must they not do so on the *cy pres* rule?

The doctrine in 10 Ves. 540, is very applicable here. As the trust must be under the control of the court, it must be of such a nature that the administration may be reviewed by the court, and if the trustee dies that the court may carry it on. If it could not be reformed and duly administered, it follows that a trust can exist over which the court cannot exercise control: which cannot be.

*Williams,* contrâ.—The intent being apparent, it lies on the defendants to point out the rule of law which renders the devise void: 3 Pet. 116. It is objected there are no trustees competent to take, but that is an immaterial fact: Duke, 476–8, n.; 1 W. Bl. 90; 1 Ca. in Ch. 134; Amb. 422. In all these cases there was no trustee, and the objects were incapable of taking directly. Sometimes a purpose only was designated. The American cases are equally strong: 2 Pet. 566; 9 Cranch, 296–332; 3 Pet. 99. In 6 S. & R. 211, a *grant* to the inhabitants of an unincorporated town was sustained. McGirr *v.* Aaron, 1 Penna. 49, was a devise to a priest and his successors, which was held to vest in the congregation. In Witman *v.* Lex, 17 S. & R. 92, the present objection was held immaterial if a discretion was vested anywhere. Here it is in the meeting: That is a quasi corporation having organization and officers—its members are ascertainable at any time. In Magill

*v.* Brown, in the Circuit Court, the same uncertainty existed and was deemed immaterial, and that and Witman *v.* Lex were sustained in 2 How. 127.

The objects are not uncertain, because there is a certain body who are to select them. Such bequests have been uniformly sustained: Finch, 245; 2 Lev. 167; Amb. 524; Ib. 422; Chit. Eq. Dig. 209; 1 Vern. 248; 1 Meriv. 55; Att'y. Gen. *v.* City of London, 1 U. S. 243; 16 Ves. 206; 2 M. & Keen, 59.

M'Girr *v.* Aaron, 1 Penna. 49, is erroneously stated by the appellants, and Kirk *v.* King was decided on an abandonment of a temporary grant. The cases from New York and Connecticut were in courts of law, there being no statute or custom to sustain charitable uses: McNullege *v.* Galbraith, and the citation in Pow. on Dev. were not charities; the latter is Webb's case, 1 Roll. Abr.

In the Maryland cases no legal distinction was recognised between charitable and other bequests. Browne *v.* Yeale was disapproved in 9 Ves. 399; 10 Ib. 534–40; and in fact overruled, 10 Ib. 22. The charities enumerated in Boyle on Charities, and by Baldwin, J., in Magill *v.* Brown, 41–55, clearly include the present case.

This is sufficient to support the devise, but the alternative object is equally entitled to protection. Free-schools are one of the objects enumerated in the statute—and in the act of 1730–1, these religious societies are expressly authorized to receive grants of lands for erecting schoools.

*Feb.* 6. GIBSON, C. J.—The complainants filed their bill to have certain papers and property delivered to them, under the will of Nathan Sheppard, who, having given certain legacies, directed the residue of his estate to "go and be applied, under the direction of the Monthly Meeting of Friends of Philadelphia for the Northern District, as a fund for the distribution of good books among poor people in the back part of Pennsylvania; OR, to the support of a free-school, or institution, in or near Philadelphia." The respondents insisted before the Common Pleas, as they insist here, that the bequest is void for uncertainty both as to the trustees and the objects of the charity.

As to the first, it is clear that since the statute of charitable uses, whose essential provisions have been assumed here as a part of our law, as they must have been had that statute never been enacted, the objection would not prevail in a similar case in England. There the Chancellor supplies all that is necessary to give

a charitable purpose effect. A bequest to an executor not nominated, or to an executor nominated but dead before the testator, though void at law, will be executed in equity where the object is a charitable one. Before our statute for self-incorporation, bequests to unincorporated religious congregations, or to literary or charitable associations, were frequent, and, indeed, there have been not a few since; yet, they have all been supported without assistance from the specific powers of a court of chancery—for it is only of late that we have had them—and to disturb the estates held under them now, would lead to great disorder.

Nor is the objection for uncertainty as to the object, better founded. The doctrine was fully discussed in Moggridge v. Thackwell, 7 Ves. 36, and Mills v. Farmer, 1 Meriv. 54, both of them cases which are apposite to the present. In the first of them, the trustee was desired to dispose of the residue in such charities as he should think fit, recommending poor clergymen with large families and good characters, and the bequest was established. Yet the object of it was at least as indefinite as either of the objects of the present bequest—the distribution of good books among poor people in the back part of Pennsylvania, or the support of a free-school or institution in or near Philadelphia. In the second, the testator directed the residue of his estate to be divided for promoting the gospel in foreign parts and in England, and for bringing up ministers in different seminaries, and for other charitable purposes: and Lord Eldon, reversing the decree of the Master of the Rolls, established the bequest and directed it to be carried into effect. After these two decisions by that eminent Chancellor, who, in the Attorney General v. Stepney, 10 Ves. 22, openly set his face against all religious charities that were not subservient to the religious views of the established church—a consideration that has no influence here—there is little to be said. The influence of the church establishment was, doubtless, felt in Browne v. Yeale, a case very faintly praised even by Lord Eldon, and in which Lord Thurlow seemed to think that no books have a tendency to promote the interests of virtue and religion, and the happiness of mankind, but such as are not of a sectarian character. In Pennsylvania, such a bequest would not be the less charitable, though the books were scientific. Whenever a general, but vague purpose of charity is disclosed, an English Chancellor upholds the bequest, but applies the fund to a charity of the same kind if the meaning of the testator can be discovered; if it cannot, then according to a scheme of application reported by a master; and the worst that could

befall such a bequest as this in his court, would be an arbitrary disposition of the fund, which we have never attempted. But we certainly will not let a charitable bequest fail where there is a discretion or an option given to the trustee, and if he cannot apply it to all the contemplated objects, it will be sufficient if he can apply it to any of them. But power to act at discretion, need not be expressly given if it can be implied from the nature of the trust. Now this residue may be applied, by the very words of the bequest, either to a supply of good books, or the support of a school. What school? Any free-school or institution that the Monthly Meeting may select, provided it answer the description in the bequest. It is thus capable of being reduced to certainty, and as the Monthly Meeting has the option of applying the fund to the one object or to the other, an uncertainty in one of them would not vitiate both. But both are sufficiently certain, and the property was properly decreed to the complainants.

Decree affirmed.