## Mann *et al. versus* Mullin.

| | |
|---|---|
| 84 | 297 |
| 162 | 582 |
| 84 | 297 |
| 200 | 322 |
| 84 | 297 |
| 208 | 1 65 |
| 84 | 297 |
| 218 | 166 |
| 218 | 167 |

1. Testator in 1850 made a will, devising certain property "to be applied to the education of poor young men of Bedford county, that may be deemed by the court worthy, and intend preparing themselves for the ministry, without regard to religious sect, being Christian as a matter of course." Testator died in 1873, and his heirs contested the validity of the trust. *Held,* that the testator intended to vest the discretion of the selection in the Court of Common Pleas, and while that court could not exercise such a discretion either by itself or a trustee of its appointment at the date of the will, yet at the time of the death of testator it had acquired that capacity by virtue of the Act of 26th of April 1855, which empowers said courts to act as testamentary trustees.

2. Although the Act of 1855 is prospective only, and the court therefore had no power to act as trustee at the date of the will, the testator here having appointed the court, the act removed this disability and made it competent to administer the trust.

3. The trust in other respects valid.

May 14th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Bedford county :* Of May Term 1877, No. 151.

Ejectment by James Mann and others against David W. Mullin, trustee, for a farm of three hundred acres of land, situated partly in the borough and partly in the township of Bedford.

Defendants pleaded not guilty, issue, &c.

The questions involved were submitted to the court in a case stated substantially as follows :—

"Hon. Job Mann died on the 8th day of October 1873, leaving his last will and testament in writing, dated at Washington City, July 1850 ; leaving surviving him a widow, Ruth E. Mann, and no issue, but collateral heirs, plaintiffs in this case ; and seised in his demesne as of fee, *inter alia,* of the farm in dispute, and for the possession of which this action is brought ; that on the 18th of March 1874, on the nomination of said widow, William F. Mann and David F. Mann were appointed administrators of the estate *cum testamento annexo,* the executor in the will being deceased ; that on the same day the said widow filed her election in writing, in the register's office, not to take under said will, but claimed her dower at common law, and her share of the personal estate ; that subsequently, to wit, on the 25th day of October 1875, the court appointed D. W. Mullin, Esq., the defendant in this case, trustee under said will, to take charge of the farm and conduct the business relating to the same and receive and account for the proceeds thereof, as provided for in said will ; to give bond, with approved security, in the sum of $5000, and that bond, duly approved, has been filed by said trustee ; that in relation to said farm, the said Job Mann, testator, by his will aforesaid, made the following provisions, to wit :—

[Mann *v.* Mullin.]

" ' To my wife, Ruth E. Mann, I give and bequeath my mansion house and the two lots of ground in Bedford, Pennsylvania, for and during her natural life, also the rents, issues and profits of my farm near town, for the same period; * * * my farm William N. Farquhar is to have a home on during his life; after the death of my wife, the proceeds of the farm to be applied to the education of poor young men of Bedford county that may be deemed by the court worthy, and intend preparing themselves for the ministry, without any regard to the religious sect or denomination, being Christian, as a matter of course; * * * should it at any time happen that there was no acting executor, the Court of Common Pleas of Bedford county to appoint one, with the consent of my wife; after the death of my wife the said court to appoint a trustee to conduct the business relating to the farm and truly account for the proceeds thereof, as provided herein;' that the farm referred to in the will as 'my farm near town,' is the farm described in the writ of ejectment in this case, and is now in the possession of the defendant.

" It is conceded as a part of this case that the persons named as plaintiffs are the proper heirs at law of the Hon. Job Mann, being descendants of his brothers and sisters.

" The plaintiffs claim that the devise of ' the proceeds of the farm to be applied to the education of poor young men,' &c., is null and void, by reason of uncertainty, by reason of its being a gift for private charity, by reason of failure to name which court shall make the selection of these ' poor young men,' by reason of attempting to impose on the court functions not prescribed or allowed by law, and in no wise judicial, by reason of the omission to dispose of the farm, the proceeds thereof only having been devised, by reason of the testator's attempt to create a perpetuity, and for various other reasons ; that it creates a perpetuity and provides an accumulation beyond the legal period, and contravenes the law and public policy. If under the facts as stated, the plaintiffs are entitled in law and equity to recover the land from the defendant, then the court to enter judgment for the plaintiffs, with costs ; but if in law and equity the plaintiffs are not entitled to recover the land from defendant, then the court to enter judgment for the defendant ; reserving to each party the right to a writ of error."

The court entered judgment for the defendant which was the error assigned.

*William P. Schell, William P. Schell, Jr.,* and *Frank R. Schell,* for plaintiffs in error.—The gift is equivalent to a devise of the farm : Coke Litt. 4 ; Carlyle *v.* Cannon *et al.,* 3 Rawle 489 ; McCullough's Appeal, 2 Jones 197 ; Thompson *v.* Swoope, 12 Harris 480 ; Griffitts *v.* Cope, 5 Id. 99. It is uncertain which court testator intended should select the object of his bounty. In cases

of testamentary trusts the Orphans' Court has concurrent jurisdiction with the Common Pleas: Brown's Appeal, 2 Jones 333; Baird's Case, 1 W. & S. 288.

This charity is a private one: Brown v. Hummell, 6 Barr 87. The *cestui que trusts* are uncertain; they cannot be identified or come into court and claim the benefit conferred; and there is no power anywhere given, which can be exercised, whereby they can be ascertained. This indefiniteness will defeat the charity, even if it be considered a public one, and therefore with greater force will it avoid it if it be a private charity.

The Act of 26th April 1855, Pamph. L. 331, is not retroactive, and therefore this will, which was made in 1850, is not within its operation: Taylor v. Mitchell, 7 P. F. Smith 209; Gable's Ex'rs v. Daub, 4 Wright 217; McLean v. Wade, 5 Id. 216; Becker's Appeal, 3 Casey 52; Neff's Appeal, 9 Harris 247; Fisher v. Farley, 11 Id. 501.

The Statute 43 Elizabeth, known as the Statute of Charitable Uses, was the culmination of the legislation in England on this subject. The statute is not extended to Pennsylvania, but still the principles of it, as applied by chancery in England, obtain here by force of our common law, and relief will be given so far as the powers of the courts will enable them: Witman v. Lex, 17 S. & R. 88; Zimmerman v. Anders, 6 W. & S. 218; Dom. and For. Miss. Society's Appeal, 6 Casey 433; Miller v. Porter, 3 P. F. Smith 299 n.; Magill v. Brown, Brightly 347.

Courts of equity have an original and inherent jurisdiction over charities independent of the statute: Vidal v. Girard, 2 How. 127, and authorities in note on page 638, Perry on Trusts.

In England the lord chancellor was vested not only with the ordinary equity jurisdiction of the Court of Chancery, but, as the keeper of the king's conscience, was intrusted with a part of the king's prerogative in his jurisdiction over charities, and so could exercise the prerogative power of devoting a gift for a charitable use to such other charitable purpose *cy pres* the original gift as he chose. This prerogative *cy pres* power does not exist in this country: Witman v. Lex, 17 S. & R. 93; Brendle v. Church, 9 Casey 421; Philadelphia v. Girard, 9 Wright 9; Zeisweiss v. James, 13 P. F. Smith 469; Bispham's Equity 134; Methodist Church v. Remington, 1 Watts 226. The application of the judicial *cy pres* doctrine, in the exercise of a general equity jurisdiction, stands upon very different grounds, and is favored in this country as well as in England: Vidal v. Girard, 2 How. 77; Magill v. Brown, Brightly 347 n.; Philadelphia v. Girard, 9 Wright 27; Parsons on Trusts 670. This gift is not to charity generally, but for a particular charity, and there is no room for the application of the *cy pres* doctrine even as a rule of construction: Attorney-General v. Ironmongers' Co., 2 Myl. & K. 576.

The functions imposed by the will on the court are in no wise judicial. They cannot be exercised without resorting to the prerogative power of the lord high chancellor, which it does not possess. Prerogative or ministerial functions can only be granted to the court by appropriate legislation. It can neither assume such functions nor act under them when granted by individual authorization.

The discretion given to the court by the will is a personal trust, and was given because the testator had confidence in its judgment, its integrity and fitness; and he made no provision for the devolution of the trust upon any one else in any event whatever. Therefore, if it cannot exercise the power, it cannot delegate it to any person or trustee.

*J. P. Reed, G. H. Spang* and *Hall & Jordan*, for appellees, to sustain the trust, cited Witman *v.* Lex, 17 S. & R. 88; McGirr *v.* Aaron, 1 P. & W. 49; Cresson's Appeal, 6 Casey 437; Wright *v.* Linn, 9 Barr 434; Pickering *v.* Shotwell, 10 Id. 23; Evangelical Association's Appeal, 11 Casey 316; Zimmerman *v.* Anders, 6 W. & S. 218; Porter's Case, 1 Coke 23; Miller *v.* Teachout, 24 Ohio 525; Redf. on Wills *685, n. 51.

The statute of Elizabeth is in force in Pennsylvania and in Kentucky, and we refer to Moore's Heirs *v.* Moore's Devisees, 4 Dana 354, as in principle on all fours with this case.

Mr. Justice SHARSWOOD delivered the opinion of the court, May 28th 1877.

The foundation upon which the doctrine of charitable uses rests in this state is firmly settled. While the statute of 43 Elizabeth is not in force, the principles which the English chancery has adopted on the subject obtain here, not by virtue of the statute, but as part of our common law. The fact is that those principles were recognised and applied in England before the statute, which only introduced a new remedy. Hence trusts for charities with us have always been upheld and enforced, no matter how uncertain were the objects, and though the effect evidently was to create a perpetuity. These have never been allowed as objections to their validity. Yet before the year 1855 it was a clear and well-settled rule that when the objects of the charity were uncertain, there must be vested somewhere in a competent trustee or trustees the discretion absolutely necessary to carry them into effect by selecting those objects. By the provision of the tenth section of the Act of Assembly, passed April 25th 1855, entitled "An Act relating to corporations and to estates held for corporate, religious and charitable uses," Pamph. L. 331, this rule is impliedly recognised and a remedy enacted for future cases, in which the donor or testator has

[Mann v. Mullin.]

omitted to vest such a discretion in a trustee or trustees, or it has failed to be effectual by the death or other disability of the person or persons whom he may have appointed. That provision is, "that no disposition of property hereafter made for any religious, charitable, literary or scientific use shall fail for want of a trustee, or by reason of the objects being indefinite, uncertain or ceasing, or depending upon the discretion of a last trustee, or given in perpetuity, or in excess of the annual value hereinbefore limited; but it shall be the duty of any Orphans' Court or court having equity jurisdiction in the proper county to supply a trustee, and by its decrees to carry into effect the intent of the donor or testator, so far as the same can be ascertained and carried into effect consistently with law or equity, for which purpose the proceeding shall be instituted by leave of the attorney-general of the Commonwealth, on the relation of any institution, association or individual, desirous of carrying such disposition into effect." It has been decided by this court that this act is prospective and applies only to dispositions of property thereafter to be made: Taylor v. Mitchell, 7 P. F. Smith 209. The will of Job Mann, which created the trust which is now before us for adjudication, was executed before the passage of the act. By that instrument it is perfectly clear, and indeed it has not been and cannot be controverted, that the only person or body in whom he vested the discretion of selecting as the objects of the charity which he meant to establish for the poor young men of Bedford county, such as may be worthy and intend preparing themselves for the ministry, is the Court of Common Pleas of that county. The ingenious young gentleman who argued this cause on behalf of the plaintiffs in error, with great ability and commendable industry and research, contended that it was not within the power of that court to accept and exercise such a discretion, it not being of a judicial nature, and no court in this state possessing that jurisdiction of the lord chancellor which he holds as keeper of the king's conscience, under the sign-manual, and which springs exclusively *ex prerogativa regis*.

We are inclined to concede the truth and correctness of this contention as of the date of Mr. Mann's will, and that at that time the Court of Common Pleas was not competent either itself or by a trustee to be appointed by it to exercise such a discretion as the testator intended to confide in it. But in 1873, when Mr. Mann died and his will went into effect, the legislature, by a general law, had vested in the Court of Common Pleas, being a "court having equity jurisdiction in the proper county," as a judicial function the duty of carrying into effect the intent of a donor or testator, wherever in a disposition of property for charitable uses thereafter to be made, there was either no trustee or it "depended upon the discretion of a last trustee." The will of Mr. Mann was ambulatory until

[Mann *v.* Mullin.]

his death. No rights in his estate under it or against it vested until
that period. If at that time the Court of Common Pleas could not
as a judicial function have exercised the discretion intrusted to it
by the will, there would have been no competent trustee and the
trusts would have failed. We agree that no subsequent act of the
legislature, general or special, could have imparted to it new life.
But here at the period when the will went into effect the court was
invested with this function as part of its judicial duties. It may
be objected that it was only so invested as to dispositions of property
made subsequent to the passage of the law. It is undoubtedly true
that if Mr. Mann had named no trustee, or to use the words of the
act the trust had " depended on the discretion of a last trustee,"
the statute would not have helped the case. But here Mr. Mann
did name the court as trustee, incompetent to exercise such a dis-
cretion at the date of his will, but made competent by a legislative
enactment before his death as to wills made subsequently thereto.
It can no longer be said that it is not a part of the judicial functions
of a Court of Common Pleas by its decrees as a court of equity to
carry into effect the intent of a donor or testator who has meant to
establish a charity, but has failed to name a trustee to exercise the
necessary discretion. The legislature has declared that the court
is not incompetent to exercise such a function. Apart then from
the operation of the tenth section of the Act of 1855, which we
agree to be prospective only, it is a declaration of the will of the
legislature that the Courts of Common Pleas are tribunals competent
to carry into effect discretionary trusts, that such a jurisdiction may
be safely intrusted to them, and although where the donor or tes-
tator has not named them in a disposition prior to the date of the
statute, they cannot assume the function, yet the case is very dif-
ferent where he has appointed them, and the only question is as to
their competency. No one can doubt that if Mr. Mann had con-
fided this discretion to a person who at the date of the will was a
child, an infant without discretion or a lunatic, or under any other
disability to exercise it, and before his death the disability had been
removed, the trust would have been unimpeachable for this cause.

Judgment affirmed.