## Dulles's Estate.

*Wills—Trusts and trustees—Charitable use—Discretion of executor.*

Testatrix directed her executors in default of written directions by her, to distribute a fund " among such religious charitable and benevolent purposes and objects or institutions as in their discretion shall be · best and proper." *Held,* that a valid trust was created.

The use of the word "benevolent" in such a will in connection with the words "charitable and religious" does not render the trust so indefinite that it becomes inoperative with the result of an intestacy as to the residuary estate.

Indefiniteness is not a valid objection to a trust so long as there is a tribunal authorized to define it.

The owner of property may do as he pleases with it provided the disposition be not to unlawful purposes, and what he may do himself he may do by agent while living, or by executor after death.

Argued Jan. 18, 1907.    Appeal, No. 243, Jan. T., 1906, by the Real Estate Trust Company of Philadelphia et al., Executors of the will of Mary C. Dulles, deceased, from decree of O. C. Phila. Co., dismissing exceptions to adjudication in Estate of Mary C. Dulles, deceased.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication.    Before ASHMAN, J.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing exceptions to adjudication.

*Joseph deF. Junkin* and *George H. Earle, Jr.,* for appellant. —A will must be construed so as to avoid a partial intestacy

unless the contrary be unavoidable : Vance's Estate, 209 Pa. 561.

As to charitable uses in this state, the test is not whether the use is indefinite and uncertain as to its objects, but whether discretionary power is vested in some one over its application to those objects : Witman v. Lex, 17 S. & R. 88 ; Domestic & Foreign Missionary Society's Appeal, 30 Pa. 425 ; Cresson's Appeal, 30 Pa. 437 ; Evangelical Assn's Appeal, 35 Pa. 316 ; Zeisweiss v. James, 63 Pa. 465 ; Mann v. Mullin, 84 Pa. 297.

Any decisions of England, or of other states, contrary to this doctrine, are based upon different principles, to wit: that the courts are to supervise and carry out the testator's bounty, and that they will sustain donations for public charities only within the statute of Elizabeth.

The steady trend of the decisions in this state has been to broaden the English doctrine, and uphold all bequests, both public and private, if some one is designated to make selection : Beck's Appeal, 116 Pa. 547 ; McCurdy's Appeal, 124 Pa. 99 ; Murphy's Estate, 184 Pa. 310 ; Stevens's Estate, 200 Pa. 318 ; Schleicher's Estate, 201 Pa. 612.

*Samuel Gustine Thompson*, for appellees.—A gift for an indefinite purpose, which is not charitable, within the meaning of the statute of Elizabeth, will not be supported : Morice v. Bishop of Durham, 9 Ves. 399 ; Tudor on Charitable Trusts, 36 ; Ommanney v. Butcher, 1 Turner & Russell, 263 ; James v. Allen, 3 Merivale, 17 ; Thomson v. Norris, 20 N. J. Eq. 489 ; Atty. General v. Haberdashers' Co., 1 Mylne & Keen, 420 ; William v. Kershaw, 5 Clark & Fin. 111 ; Livesey v. Jones, 55 N. J. Eq. 204 (35 Atl. Repr. 1064); Nichols v. Allen, 130 Mass. 211 ; Mason v. Perry, 22 R. I. 475 (48 Atl. Repr. 671); Wheeler v. Smith, 50 U. S. 55 ; Kain v. Gibboney, 101 U. S. 362.

Opinion by Mr. Chief Justice Mitchell, May 13, 1907 :

The fundamental law of Pennsylvania in regard to property, which ought not to require restatement as often as it does, is that the owner may do as he pleases with it provided the disposition be not to unlawful purposes, and what he may do himself he may do by agent while living, or by executor after death. This principle disposes of this case.

Miss Dulles, living, could have taken her securities out of her strong box, and handed them to the appellants with directions, even verbal, to distribute them in their discretion among religious, charitable and benevolent objects or institutions. That disposition would have been valid and unassailable. There is no good reason why Miss Dulles, dead, should not make the same disposition of her property by testament.

The language of her will in regard to the residue of her estate is : " I do hereby direct my said executors to pay over, appropriate, dispose of and distribute the same or the proceeds arising from the sale thereof to and among such religious charitable and benevolent purposes and objects or persons or institutions as I shall specify in a writing to be prepared and signed by me for that purpose; or in default of such written direction left by me, then and in such case I do hereby give and grant unto my said executors and the survivor of them full and unlimited power and authority to pay over, appropriate, dispose of and distribute the said rest, residue and remainder of my estate to and among such religious charitable and benevolent purposes and objects or institutions as in their discretion shall be best and proper, as I have full confidence in the judgment, ability, integrity and discretion of my said executors in the premises ; and I hereby release them from liability to account for the same."

If the testatrix had made the writing referred to and named the objects, persons or institutions she desired should take, there could be no question of the validity of the bequests whether the courts or anyone else thought the objects were religious, charitable or benevolent or not. In naming the legatees she would have defined the terms religious, charitable and benevolent for the purposes of her will, and it was within her right to do so. She did not make the written directions, however, and therefore the alternative provision of her will became operative. The discretion which was hers to exercise she chose to delegate to her executors. It was her right to do so, and so long as their discretion is not legally abused its exercise is as valid as if it was expressly her own.

It is argued that the conclusion is altered by the facts that the will created a trust and that the use of the word benevolent made the trust too indefinite to be enforced.

The injustice as well as the illogical character of such argument is apparent. However doubtful what the testatrix did in fact want may seem, it is certain she did not want her estate to pass under the intestate law. To prevent that she appointed executors presumably familiar with her wishes, and invested them with ample discretion to distribute the estate "having full confidence in (their) judgment, ability, integrity and discretion." Every element of certainty is potentially here, and yet for fear the executors thus informed and thus trusted might ignorantly or intentionally fail to do what she wanted done the court is asked to step in and do the one thing that it is absolutely certain she' did not want, pass the estate under the intestate laws.

It is manifest that the testatrix intended distribution among others than the executors, and that the gift to them was in a fiduciary capacity. There was, therefore, a trust. But that does not interfere with the discretion of the trustees, except to limit their powers to the purposes intended, and to enable the courts to prevent a plain diversion of the gift which would be a fraud on the trust. It is said that the word benevolent is not definite enough for the court to enforce. But it is not necessary that it should be. The definition and application of that word are not for the courts, but for the executors. The only authority of the court is to prevent a manifest diversion to a purpose clearly outside of the class prescribed. So long as the executors are exercising their right of selection in good faith the right to do so is in them by the express words of the testatrix's will.

The word benevolent presents no insuperable difficulties even if it had to be defined. Though it covers a wide field its essential and substantial meaning is familiar and easily grasped. It is little if any more indefinite than the word charitable in its varied legal senses. In many cases they have been held to be synonymous. It might well be so held here, though in its general sense it is a word of wider meaning. But whether the meaning is the same or not is immaterial. In either case it is a trust, and in a trust indefiniteness is not a valid objection so long as there is a tribunal competent to define it.

It is not worth while to discuss the numerous highly re-

fined and technical distinctions in the English cases and those of some other states. They are mostly founded on the statute of 43 Elizabeth which is not in force in Pennsylvania, but whose principles have been adopted as part of the common law of the state, broadened and shorn of technicalities in obedience to the spirit of modern equity. Our own cases have settled the principles sufficiently for all present purposes.

In Pickering v. Shotwell, 10 Pa. 23, a bequest of a sum to "go to and be applied, under the direction of the Monthly Meeting of Friends of Philadelphia for the Northern District, as a fund for the distribution of good books among poor people in the back part of Pennsylvania, or to the support of an institution, or free school in or near Philadelphia," was held not too uncertain, since the monthly meeting had the option of reducing it to a certainty. And in Mann v. Mullin, 84 Pa. 297, a trust to be applied "to the education of poor young men of Bedford County that may be deemed by the court worthy, and intend preparing themselves for the ministry without regard to religious sect, being Christians as a matter of course," was held valid. After these two cases it would be difficult to defeat any trust on the ground of uncertainty so long as there is a competent person or tribunal to define and make certain the objects intended. In the last named case SHARSWOOD, J., said : " The foundation upon which the doctrine of charitable uses rests in this state is firmly settled. While the statute of 43 Elizabeth is not in force, the principles which the English chancery has adopted on the subject obtain here, not by virtue of the statute, but as part of our common law. The fact is that those principles were recognized and applied in England before the statute, which only introduced a new remedy. Hence trusts for charities with us have always been upheld and enforced, no matter how uncertain were the objects, and though the effect evidently was to create a perpetuity. These have never been allowed as objections to their validity."

In Domestic and Foreign Missionary Society's Appeal, 30 Pa. 425 (435) it is said by STRONG, J. : " The general rule may be stated thus :—in the case of a will making a charitable bequest, it is immaterial how vague, indefinite and uncertain the objects of the testator's bounty may be, provided there is a

discretionary power vested in some one over its application to those objects."

And see also Kinike's Estate, 155 Pa. 101; Murphy's Estate, 184 Pa. 310; and Schleicher's Estate, 201 Pa. 612.

In some of the cases it may be conceded there is a tendency to dwell on the distinction between trusts for charitable and those for benevolent purposes, and the learned court below gave weight to that distinction in the present case. But it is not a safe basis for adjudication. It is said that charities are under the special care and protection of chancery, but so are trusts in general. No absolute or exhaustive definition of either charity or benevolence in its legal sense has ever been formulated, and the distinction between them is shadowy and evanescent. The education of poor and worthy young men (Mann v. Mullin, 84 Pa. 297), the planting of shade trees or endowing a professorship of fine arts (Cresson's Appeal, 30 Pa. 437), and the distribution of " good books " among poor people in the back part of Pennsylvania (Pickering v. Shotwell, 10 Pa. 23), might certainly be classed under either term with equal propriety. In this last case GIBSON, C. J., said of the provision for good books that in Pennsylvania the " bequest would not be the less charitable though the books were scientific." And he might have said that the trust would be equally valid whether for religious, charitable, benevolent, artistic, literary, patriotic, scientific or other lawful purpose. Upon the question of want of certainty or definiteness the distinction between the purposes of any lawful trusts is not part of the ratio decidendi. The decisions rest on the maxim id certum est quod certum reddi potest, and so long as there is a tribunal authorized, either expressly or by reasonable implication, to define and make certain the objects, the trust is not void for uncertainty. It is not necessary that the courts unaided should be able to define the specific objects. It is sufficient if the general purpose is made clear enough for the court to perceive and prevent such a diversion as would be a fraud on the testator's intent. As said by STRONG, J., in Domestic and Foreign Missionary Society's Appeal, 30 Pa. 425, already cited : " A court can know the class, but individual designation is left to the trustee, who is the dispenser of the bounty and who is under obligation to dispense within the class."

The practical questions, therefore, in such cases are, first, is the testator's general intent ascertainable; and, second, is there any tribunal provided to ascertain the specific objects to which such intent is to be applied? If so the trust is not void for uncertainty, whether it is for a technical charity or not.

The testatrix's will in this case complies with both these conditions, and is entitled to be carried out according to its terms.

The decree is reversed and the fund directed to be awarded to the executors for application in accordance with the will.