**Scholler Estate**

Before Klein, P.J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of

LEFEVER, J., December 7, 1959. — Under date of June 22, 1939, Frederick C. Scholler, settlor, executed an irrevocable deed of trust wherein he created the "Scholler Foundation". Settlor appointed himself, his sister, Ida M. Scholler, and Frederick C. Fuges, as trustees. The three trustees have died, and successors have been appointed in accordance with the procedure and requirements prescribed in the deed. There is presently before the court the first account of the successor trustees, Lloyd O. Koons, Frank E. Holland, E. E. Rettberg, Jr., Frederick L. Fuges and A. Winston Edwards.

The trust instrument opens with a "Declaration of Purpose", viz.:

"I, Frederick C. Scholler, of the City and County of Philadelphia, Commonwealth of Pennsylvania, out of the wealth accumulated by me and that derived by me

from my sister, Ida M. Scholler, and from my brothers, Adolph, Henry H. and William H. Scholler, desiring, in conformance with their known wishes, to create a fund, the income of which shall be used *for the benefit of mankind*; to set up *a charitable entity* to which I may ultimately transfer all my shares of stock in Scholler Brothers, Inc., Scholler Brothers, Ltd., and Trisco Products, Inc.; to combine my shareholdings in said corporations with whatever other property I now or hereafter may convey to *the charitable entity* so that the income derived from the shares of Scholler Brothers, Inc., Scholler Brothers, Ltd., and Trisco Products, Inc., together with the income derived from the other property now or hereafter transferred to *the charitable entity*, will be used *for the benefit of mankind*; and finally, desiring to perpetuate the memory of my deceased brothers and to carry out their wishes and the wish of my sister, Ida M. Scholler, that the wealth accumulated by them be used perpetually *for the betterment of mankind*; to hereby create and establish *a charitable trust* to be known as The Scholler Foundation, hereinafter referred to as the Foundation." (Italics supplied).

Settlor then transferred and conveyed the corpus of the trust to the trustees, in trust:

"To take, receive, hold, invest and reinvest the same, and to collect the rents, issues and profits therefrom; and to pay and distribute the same for such of the *following charitable purposes* as the Trustees, or a majority of them, shall determine:

"In general, *without in any way restricting the charitable purposes* for which same may be distributed, for the *alleviation of poverty and destitution*, for the *promotion of scientific research*, including research in the various branches of chemistry, for assistance to persons under a physical disability, *for enabling needy students to obtain college educations*, for the *benefit of*

*colleges, universities, churches, hospitals,* [and *similar charities*], and for *such other charitable,* (literary), [*educational and public*] *purposes* as in the discretion of the Trustees may seem desirable, the distribution, however, not to be limited geographically to the United States of America; (and specifically for the purpose of providing hospitalization, medical care, and educational, literary, and recreational facilities for employees and/or former employees of Scholler Brothers, Inc., and/or Scholler Brothers, Ltd., and/or Scholler Brothers, Ltd., and/or Trisco Products, Inc., and their families, and/or employees of any other corporation, a majority interest in the voting stock of which is subsequently acquired by The Scholler Foundation, or by Scholler Brothers, Inc., or Scholler Brothers, Ltd., or Trisco Products, Inc.)." [1] (Italics supplied.)

The trust deed set forth in careful detail the powers and duties of the trustees, particularly with regard to the management and operation of settlor's three corporations, the issuance of dividends, the payment of bonuses and other pertinent matters. Settlor clearly indicated that the management and operation of the businesses should be clearly separated from the administration of the trust.

Upon request from the trustees, the United States Treasury Department, under date of February 19, 1947, ruled: ". . . that The Scholler Foundation is entitled to exemption from Federal income tax . . . as it is shown that the foundation was created and is operated exclusively for charitable purposes."

Request for similar ruling was made to the Department of National Revenue — Taxation Division, of Canada. Under date of June 21, 1951, the Canadian

---

[1] For purposes of ready analysis and interpretation of this key paragraph, the words deleted in the so-called amendment of August 17, 1951, are placed in parentheses, and the additional words deleted in the so-called amendment of March 17, 1952, are placed in brackets.

Department ruled that: "As the benefits provided for by their second objective are to be allocated to a limited group of persons the Scholler Foundation loses its identity as a charitable organization . . .", and, therefore, is not entitled to tax exempt status.

To meet this Canadian ruling, settlor, on August 17, 1951, and on March 17, 1952, executed two documents under seal, each designated, "Instrument of Amendment of the Scholler Foundation Deed of Trust." Therein he rewrote the article entitled, "Transfer of Property," deleting all reference to the employes of his several companies, and also several questioned words and phrases.[2] The trustees joined in the amendments. The charitable objects under the final so-called amendment were as follows:

"In general, without in any way restricting the charitable purposes for which same may be distributed, for the alleviation of poverty and destitution, for the promotion of scientific research, including research in the various branches of chemistry, for assistance to persons under a physical disability, for enabling needy students to obtain college educations, for the benefit of colleges, universities, churches, hospitals, and for such other charitable purposes as in the discretion of the Trustees may seem desirable, the distribution, however, not to be limited geographically to the United States of America."

Following the above, settlor provided:

"All the terms, conditions and provisions of the Deed of Trust of THE SCHOLLER FOUNDATION shall remain in full force and effect, except insofar as they are inconsistent with the amendments herein authorized."

Settlor initially funded the trust with a gift of $1,000 in cash. Thereafter, settlor, individually and

[2] See footnote 1, supra.

through the aforesaid companies, and from time to time, gave to the trustees and the successor trustees various gifts of cash and stock of the Scholler companies in the amount of $628,553.03, prior to the execution of the amendment of August 17, 1951, in the amount of $7,500, prior to the execution of the amendment of March 17, 1952, and in the amount of $1,241,335.45 thereafter. The trustees and successor trustees accepted these gifts and added them to the trust corpus.

On October 5, 1957, settlor died a domiciliary of Atlantic City, N. J. His last will and testament, dated July 16, 1954, was probated in Atlantic County, N. J., and on October 21, 1957, letters testamentary were issued by the Surrogate's Court of Atlantic County, N. J., to Lloyd O. Koons and The First Pennsylvania Banking and Trust Company, the executors named by testator in his will.

By item 3 of his last will and testament, testator provided as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate and "howsoever found, I do give, devise and bequeath, absolutely and in fee, unto the charitable entity named 'THE SCHOLLER FOUNDATION,' and the Trustees thereof, under that certain indenture of trust dated June 22, 1939 and all amendments thereof and additions thereto, executed and delivered by me to IDA M. SCHOLLER, FREDERICK C. FUGES and FREDERICK C. SCHOLLER, the Trustees therein named, to hold the same as a part of the trust estate thereunder, in the manner, upon the trusts, terms and conditions and with all the powers and authority in the said indenture of trust of June 22, 1939 and all amendments thereof and additions thereto, set forth, in the same manner and with like effect as though the same had become a part of the trust estate under the said indenture of trust of June 22, 1939 and all amend-

ments thereof and additions thereto, upon the execution thereof."

By item 2 of his will, testator provided: "If at my death I shall be donee of any power of appointment which I shall not have properly and sufficiently exercised during my lifetime, and which may be exercised by my Last Will and Testament, I do by this my Last Will and Testament exercise such power of appointment," in favor of " 'The Scholler Foundation,' and the trustees thereof, under that certain indenture of trust dated June 22, 1939, and all amendments thereof and additions thereto," in the same language as set forth in item 3 of the will quoted above.

Settlor died unmarried and without issue. His closest living relatives are first cousins. They have challenged the validity of testator's testamentary gift to the Scholler Foundation in proceedings now pending in the New Jersey probate court. They also challenge the validity of the inter vivos trust now before this court.

The auditing judge at the first audit on May 20, 1959, questioned the right of these first cousins to appear in this court, and continued the case to enable them to clear the record on that point. Thereafter, the New Jersey probate court appointed Lewis P. Scott administrator ad litem for the purpose of challenging the validity of the trust for the Scholler Foundation provided in the deed of trust before this court. He urges that the instant trust is invalid because: (1) The trust instrument of June 22, 1939, is not "charitable" in that it specifically provides for the employes of the Scholler corporations; (2) being a perpetual trust for the primary benefit of employes, a noncharitable objective, it violates the rule against perpetuities and is void ab initio; (3) the so-called amendments of August 17, 1951, and March 17, 1952, are ineffectual since the original deed of trust of June 22, 1939, is a nullity, and

cannot become effectual by amendment; and (4) the trustees of the Scholler Foundation held all of the assets of the Scholler Foundation under a constructive trust for deceased settlor. The administrator ad litem therefore claims the entire corpus of the trust for distribution in accordance with his interpretation of New Jersey law, i.e., to the first cousins.

The trustees, and the Attorney General of Pennsylvania, parens patriae, have appeared in support of the trust. It is their position that a valid charitable trust has been created.

The trust indenture of June 22, 1939, contains the classic phraseology required to create a charitable trust. In the preamble settlor repeatedly recites that he is creating a "charitable entity" or a "charitable trust" for the "benefit of mankind" or "the betterment of mankind." Settlor opens the succeeding paragraph with the language, "In the furtherance of my general charitable purposes above described." He then transfers the property to the trustees: ". . . for the alleviation of poverty and destitution, for the promotion of scientific research, . . . for enabling needy students to obtain college educations, for the benefit of colleges, universities, churches, hospitals . . . and for such other charitable, literary, educational and public purposes as in the discretion of the Trustees may seem desirable . . ." It would be difficult to find more apt, typical, traditional, hornbook charitable trust phraseology. Moreover, an examination of the deed of 1939 from its four corners reveals a clear, unmistakable and dominant intent on the part of settlor to create a charitable trust, The Scholler Foundation. Benefitting employes of the Scholler corporations was at most incidental. The intent of the creator of a trust is the polestar in interpreting it. See Britt Estate, 369 Pa. 450, 455. It follows that in the absence of compelling, overriding reasons to the contrary, settlor's intent controls.

The English courts have been more strict than the Pennsylvania courts in the requirements for valid charitable trusts. Thus, in Oppenheim v. Tobacco Securities Trust Co. (1951), A. C. 297, and in In re Cox (Canada 1953), 1 S. C. R. 94, aff'd (1955), A. C. 627, trusts for the benefit of employes of a single company only were stricken down. However, these trusts were limited to benefiting the particular employes of a specific company and their children, and there was no general charitable trust language, as in the instant case; nor was the main purpose charitable as in the instant case.

Pennsylvania does not follow this rule of strict interpretation. In contrast, charities are favorites of the Pennsylvania law, and, if possible, an instrument will be construed to sustain a charitable gift: Mann v. Mullin, 84 Pa. 297; Kinike's Estate, 155 Pa. 101; Anderson's Estate, 269 Pa. 535; and Funk Estate, 353 Pa. 321, and cases therein cited. Thus the clauses, "to distribute the same among such charitable institutions, and in such proportions as they in their discretion deem proper" (Kinike's Estate, supra) ; "to distribute said residue among such institutions or do such acts of charity therewith as in their judgment may seem best" (Anderson's Estate, supra) ; and "the rest to be given to some worthy cause or institution" (Funk Estate, supra), were held to create valid charitable gifts. Moreover, a gift for charitable and benevolent purposes will be construed to constitute a gift for charitable purposes. See Funk Estate, supra. The deed of 1939, in effect, provides for a gift for charitable and benevolent purposes. The clauses granting discretionary benefactions to the employes of the Scholler companies clearly state a benevolent purpose. Had the general terms "charitable" and "benevolent" been used in the deed rather than the more explicit phraseology employed, the gift could be held to be purely

charitable. Moreover, the disputed provision with respect to distributing benefits of the trust to employes and/or former employes does not stand alone. It must be read in context, following the general provision for charitable purposes. The deed thus provides for a valid charitable purpose and, in addition, authorizes the trustees in their discretion to apply the funds for a doubtful charitable purpose.

The Restatement of Trusts 2d §398 directly governs this situation. It states:

"If the settlor manifested an intention that the whole of the trust property should be applied to charitable objects unless the trustee should choose to apply a part of it to noncharitable objects for which a trust or power cannot validly be created, and his primary purpose was to apply it to the charitable objects, the power to apply the property to the other objects is invalid, and there is a valid charitable trust of the whole of the property."

To the same effect is In re Coxen, 1948 Ch. 747. There, settlor established a trust for a valid charitable object, viz., an orthopedic hospital, and also provided for use of certain of the funds for dinner parties for the trustees and others. The court ruled that if the use of the funds for the dinners was invalid, all of the funds should be expended for the charitable purposes, and in any event the trust should be sustained.

Similarly, Comment c to §398 of the Restatement of Trusts 2d, states:

"Where by the terms of the trust a word is used which standing alone would be broader than charity, it may in view of the other terms of the trust be interpreted as limited to charity. Thus, where a testator devises or bequeaths property to be applied to 'charitable or benevolent' purposes, the word 'benevolent' may be interpreted as a synonym for 'charitable,' and not as including purposes which are not charitable,

even though the word 'benevolent' standing alone might be interpreted as including purposes which are not charitable."

It follows that provisions in the instant trust for "providing hospitalization, medical care, and educational, literary and recreational facilities for employes . . .", provisions which are not specifically charitable, do not invalidate this otherwise charitable trust. Moreover, all of the $620,533.73 distributed to date by the trustees of the Scholler Foundation has been paid to proper and undisputed charities; nothing has been paid to employes. And settlor was a trustee for most of the life of the trust.

The rationale from the foregoing is that even if the provision for employes be deemed noncharitable, this secondary purpose must, under common law principles, yield to the dominant charitable intent.

Rules of interpretation need not be resorted to in this case, however, because settlor covered this contingency in the last paragraph of the deed, viz:

"The provisions of this Deed of Trust are severable, and if any of the provisions thereof shall for any reason be held to be invalid, such decision shall operate only to eliminate the particular invalid provisions, and the then remaining provision of the Deed of Trust shall not in any manner be affected thereby."

Applying settlor's express direction, the language dealing with the employes of the Scholler companies shall be deemed eliminated from the instrument. The remaining trust purposes are valid and the corpus will be awarded back to the trustee for those purposes.

If any doubt remains that the deed of 1939 creates a valid charitable trust, it is dispelled by the so-called amendments of August 17, 1951, and March 17, 1952. They expressly and purposefully eliminated all of the challenged language in the 1939 deed.

It is true that the deed of 1939 was expressly declared to be irrevocable and a settlor of an irrevocable trust ordinarily cannot compel a deviation from the instrument. Where, however, the instrument provides for restrictions upon the trustees or grants them limited discretion, settlor can consent to the removal of those restrictions or limitations. The Restatement of Trusts 2d, §367, Comment c, specifically covers this situation:

"c. Removal of minor restrictions. If by the terms of the trust the settlor has imposed restrictions of a minor character upon the trustees in the administration of the trust, the settlor can subsequently consent to the removal of these restrictions so as not to hamper the trustees in the administration of the trust. He cannot, however, compel the trustee to administer the trust in any manner other than that provided for by the terms of the trust . . ."

Although it may be that settlor in the instant case could not have compelled the trustees to ignore the provision permitting distribution to the employes, he could validly consent to the action of the trustees in refusing to exercise such discretion. The amendments of 1951 and 1952 may properly be considered such a consent by settlor to a voluntary act of the trustees.

On the other hand, if as exceptants contend, the deed of 1939 was void ab initio, the irrevocable clause fell with the rest of the trust, and the trustees held the assets on a constructive trust for settlor. As a consequence, when settlor executed the so-called amendments of 1951 and 1952, deleting the objectionable language and providing, "All the terms, conditions and provisions of the Deed of Trust of THE SCHOLLER FOUNDATION shall remain in full force and effect, except insofar as they are inconsistent with the amendments herein authorized," he in effect executed a new deed of trust, incorporating by reference all of the

terms and provisions of the deed of June 22, 1939, except the challenged words and clauses. It follows that the trustees thereafter held the assets, already contributed by settlor and those thereafter given, under the terms of a new trust, viz., the trust of 1939 as amended in 1951 and 1952.

Finally, settlor in his will in clear and unmistakable language gave his residuary estate to the Scholler Foundation. He also exercised any power of appointment he had in favor of it. This demonstrates his continued undeviating charitable intent and purpose.

The Scholler Foundation, with its opportunities to "benefit mankind," was the primary goal of settlor's life. He gave his money and directed his energies to it and its charitable objectives. Many men of success and wealth devote much of their time, money and affection to their families and their welfare. Settlor was unmarried and childless. The Scholler Foundation was the object of his attention and devotion. It was his substitute for family. His laudable charitable plan will not be lightly set aside. The auditing judge rules that a valid charitable trust was created. Therefore the rule against perpetuities does not apply.

Accordingly, the balance of principal, personalty, as shown by the account, $1,877,388.48, composed as therein set forth, subject to distribution heretofore properly made as shown by the account, and proceeds of sale of real estate, $71,332.18, is awarded, together with the income from personalty, $478,548.34, and realty, $95, and with any additional collections and interest, if any, on deposits to time of actual distribution, to Lloyd O. Koons, Frank E. Holland, E. E. Rettberg, Jr., Frederick L. Fuges and A. Winston Edwards, successor trustees, for the uses and purposes of the deed of trust of settlor, dated June 22, 1939, and

amendments thereto, dated August 17, 1951, and March 17, 1952.

Payment and distribution is so decreed, with leave to make any and all necessary assignments and transfers.

*Opinion Sur Exceptions*

*Donald S. Cohan, Samuel B. Brenner* and *Bernard A. Wecht,* for exceptants.

*Alexander Brodsky* of *Brodsky, Brodsky & Brodsky,* for administrator ad litem.

*Philip A. Bregy* and *George M. Brantz,* of *MacCoy, Evans & Lewis* and *Lois G. Forer,* Deputy Attorney General and *Anne X. Alpern,* Attorney General, contra.

BOLGER, J., March 25, 1960.—Exceptions have been filed to the adjudication on behalf of the administrator ad litem of the testamentary estate of the settlor, who died in New Jersey, and of several first cousins of the deceased settlor. The adjudication held that the primary purpose of the deed of trust was a charitable one, that the severability clause in the deed authorized the elimination of noncharitable purposes from the operation of the trust and that if, as exceptants maintain the original deed of 1939 was void ab initio, the amendments of 1951 and 1952 to the deed should be treated as though settlor had created thereby a new deed of trust incorporating by reference all valid provisions of the original deed and eliminating all invalid ones.

It is natural to expect that in the drafting, as well as in the operation and administration of this most unusual deed of trust, with its intricacy of detail, at a time when the validity of many of the terms of this instrument were more or less original in their concept,

some loopholes could be discernible. But it must be stated that the phrase of the deed upon which exceptants principally base their attack, viz., the benefits to employes of corporations in which the trust owns a majority of the stock, is taken out of context.

The learned auditing judge has carefully and correctly scrutinized this deed from its four corners. In order to aid in ascertaining settlor's primary intention and other factors stated hereafter, he has taken into consideration not only the contemporaneous circumstances, but also subsequent events (Wolters Estate, 359 Pa. 520, 525; Russell's Appeal, 75 Pa. 269), and other cases cited infra. Having done this, we are satisfied that his decision is correct. We should add that this conclusion, with which we agree, is fortified by the expression of settlor's dominant intent specifically set forth in the general statement of purpose, which precedes the enumeration of the specific purposes, and which reads as follows:

"To take, receive, hold, invest and reinvest the same and to collect the rents, issues and profits therefrom and to pay and distribute the same for such of the following charitable purposes as the trustees or a majority of them shall determine."

Settlor thus limits distribution to charitable objects only and excludes the noncharitable objects contained in the clause upon which exceptants rely. This, together with other expressions of general charitable intent, must prevail over the specific expression of intent relied upon by exceptants: Lefebvre v. D'Arcy, 236 Pa. 235; Keefer Estate, 353 Pa. 281. Insertion of the severability clause was made, no doubt, to protect the trustees in their distribution to strictly charitable objects. This they have done undeviatingly.

Since a charitable purpose has been found to exist, only the Attorney General has standing to question its validity and the terms and operation of it: Wiegand v.

The Barnes Foundation, 374 Pa. 149. Hence exceptant-cousins are purely volunteers. The administrator ad litem stands in settlor's shoes, is bound by his action and cannot properly object. His contention that the terms of the deed violate the rule against perpetuities has no application: Acts of April 26, 1855, P. L. 328, sec. 10, and of May 23, 1895, P. L. 114 as amended; Wright's Estate, 284 Pa. 334.

The extensive control which the trustees are empowered to exercise over the operation of the several corporations, the shares of stock of which constitute the trust res, and which are so clearly and comprehensively pointed out by exceptants, are matters of administration which do not basically affect the validity of the trust. If these administrative terms and their operation by the trustees interfere with the fufillment of the primary purpose of the trust or lead to its failure or open the door to possible enrichment of the trustees or to any other abuse growing out of a conflict of interest, they can be corrected at the proper time in this court or elsewhere: Toner's Estate, 260 Pa. 49; Lehigh University v. Hower, 159 Pa. Superior Ct. 84; Girard Estate, 73 D. & C. 42.

Our sole function presently is to pass upon the nature of the trust. If the impact of these terms upon the corporations involved violates the corporate law of the Commonwealth of Pennsylvania or of any other State or country having jurisdiction over them or of the rights of minority stockholders of such corporations, the jurisdiction to correct them does not lie in this court. In her brief, the Deputy Attorney General, as parens patriae for charitable trusts, expresses this view and declares her intention to test these provisions in due course in appropriate proceedings. If such provisions in the deed are illegal, they do not avoid the trust: Manners v. Phila. Library Company, 93 Pa. 165.

Another concept which supports the decision of the auditing judge, in addition to those already stated, is that although the 1939 deed was irrevocable, it was effectually *reformed* by the amendments of 1951 and 1952. The result of this reformation was the elimination from the original deed of all noncharitable purposes and any other objectionable or invalid provision relating to administration of the trust: Irish v. Irish, 361 Pa. 410 (1949). We agree with this concept and believe that its application in this case fortifies the conclusions of the learned auditing judge.

In Russell's Appeal, 75 Pa. 69, the Supreme Court permitted the reformation of a deed by a settlor. The Deed failed to provide, inter alia, for the event of settlor's husband's death before her own. Settlor was not advised what would be the consequences of such an event. Upon the death of her husband, at settlor's instance, the court held that the deed was executed as the result of a mistake and in such case when the reasons for executing the deed have passed, equity will relieve against volunteers claiming without consideration or a reasonable motive for continuing the donor's disability. The court found the mistake was one of fact mixed with law and that equity can use the mistake of fact as a means of relief. This case has been followed in Madole v. Miller, 276 Pa. 131, 135; Bristor v. Tasker 135 Pa. 110; Flagg v. Flagg, 80 D. & C. 544 (1952) ; Curry Appeal, 390 Pa. 105. Other early Pennsylvania cases treating this subject in related manner are Spangler's Appeal, 24 Pa. 424 (1855), and In re Painter's Estate, 42 Pa. 156. In Kunkel v. Kunkel, 267 Pa. 163, 172 (1920), which involved the element of mistake, Chief Justice Brown, referring to the great John G. Johnson, said: "Even good Homer sometimes nodded".

In Scott on Trusts (2d Ed.) §333.4, it is stated:

" . . . On the other hand where the settlor receives no consideration for the creation of the trust, as is usually the case, an unilateral mistake is ordinarily a sufficient ground for rescission, as it is in the case of an outright gift. It is immaterial that the beneficiaries of the trust did not induce the mistake or know of it or share it. It is immaterial whether the mistake was a mistake of fact or a mistake of law. The mistake may be such as to justify reformation rather than rescission of the trust."

Restatement of Trusts 2d: "§333 Rescission and Reformation. A trust can be rescinded or reformed upon the same grounds as those upon which a transfer of property not in trust can be rescinded or reformed."

"Comment (e) Mistake. The settlor can rescind a trust created by him as a result of a material mistake. Where no consideration is paid for the creation of the trust, it is sufficient that the settlor was induced by mistake to create the trust, although neither the trustee nor the beneficiary shared in the mistake or knew of it, since in the case of gratuitous transfers a mistake by the transferor is a sufficient ground for setting aside the transfer, although the mistake was not caused or shared by the transferee and he did not know or have reason to know of the mistake of the transferor . . ."

All of the essential elements appear in the testimony of one of the trustees and in the other parts of the record of this case to support the finding of fact that settlor made a substantial mistake in inserting the alleged objectionable provisions in the deed of 1939, that he had a right to rectify these mistakes by reforming the deed and that he effectually did so when he executed the amendments of 1951 and 1952. As stated above, the law pertaining to charitable foundations was unclear at the time this deed was executed. For this reason, no doubt, settlor interpolated the

severability clause set forth in the adjudication and gave to his trustees the discretion to distribute the income of the trust for charitable as well as for possible noncharitable purposes. The decision of the Canadian Government in refusing to clear the trust of tax for charitable purposes because the language included allegedly noncharitable objects, was the salutary event which prompted the execution of the amendments. It was at this time that he realized his error in including possible noncharitable objects in the original deed.

The other essential circumstances for reforming the deed are that the deed was settlor's voluntary act, that he was the sole possessor of any reverter interest therein, that the trustees accepted the amendments and that there was no other person then in existence whose interests would be affected by such change or had any standing to complain. Another fact which we believe has some significance, although not controlling, is that it was not until after the execution and delivery of the amendments that settlor assigned to the trust two-thirds of its present assets. It would be unconscionable and tantamount to fraud upon settlor to maintain that this portion of the res is subject to the terms of the 1939 agreement alone. Upon these findings of fact we conclude that the inclusion in the deed of the noncharitable objects was a substantial mistake, that the amendments of 1951 and 1952 effectually and legally corrected that mistake and that as so amended the deed's purpose is exclusively charitable.

The action of settlor in thus correcting his mistake was just as effective as though the reformation had been accomplished by court action. That no such court action was then taken is inconsequential. We now have the power and we do so declare that the reformation was legally effected.

Finally, if settlor's reverter interest under the 1939 deed did not become a part of the trust by reason of

the amendments of 1951 and 1952, the adjudication holding that it did, it effectually became a part of the trust under the terms of settlor's will dated July 16, 1954, wherein he gave his entire residuary estate "unto the charitable entity named the 'Scholler Foundation' and the trustees thereof under that certain indenture of trust dated June 22, 1939, and all amendments thereof and additions thereto . . ."

The exceptions are dismissed and the adjudication is confirmed absolutely.