## APPEAL OF JOHN K. McCURDY.
## APPEAL OF JOHN M. McCURDY, ET AL.
### [ESTATE OF HENRY J. STOUT.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 14, 1889—Decided February 4, 1889.

(a) The will of a testator, dying in 1875, bequeathed his residuary estate to his executors, " to be devoted and given by them to such institutions or uses, as they in their best judgment may consider the most compatible with the views and instructions which I have given them," expressly providing that none of his property should pass under the intestate laws.

(b) In 1877, the executors executed a sealed instrument declaring they had paid all the legacies then due and secured those to become due on the termination of life estates, " that being the utmost extent (with exceptions hereinafter set forth), to which, after years of reflection, Mr. Stout wished his estate to be applied for either charitable purposes or the benefit of relatives, as he repeatedly declared to executors ; "

(c) And then declared that the residue was their own by law, but that nevertheless they deemed it their duty and therefore appropriated and devoted certain sums to purposes which they stated to be, " in compli-

ance with wishes expressed to them about the same," and, finally, divided the remainder between themselves, releasing forever all causes of action either might have against the other on account thereof.

1. By the provisions of the will referred to, a trust was created as to the residuary estate, and what was given to the executors by the clause quoted was not a discretion to distribute the estate according to their judgment, but a discretion to carry out the views and instructions received from the testator: Beck's App., 116 Pa. 547, distinguished.

2. The only evidence of the objects of the trust being the testimony of the executors, one of whom was dead, and they having by a solemn instrument declared that they had fully carried out or provided for all the objects of the testator's bounty, as expressed by him in his instructions, the court would not inquire further as to unexecuted instructions.

3. Wherefore, there being a trust established, and the purposes of it being exhausted, the remainder of the residuary estate, unappropriated by the executors in accordance with the views and instructions of the testator, passed as in case of an intestacy, however contrary to the testator's desire, and was distributable to his next of-kin.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 259 January Term 1888 and No. 232 January Term 1889, Sup. Ct.; court below, No. 564 April Term 1879, O. C.

On June 14, 1887, the fifth account of the executors of Henry J. Stout, deceased, as filed by John K. McCurdy, surviving executor, was called for audit before ASHMAN, J., when the following facts appeared:

Henry J. Stout died on February 6, 1875, having left a will dated December 21, 1870, duly admitted to probate, with a codicil thereto dated July 3, 1872. The will contained forty-one paragraphs, the first twenty-three of which were made up of bequests to various charitable institutions in Philadelphia. The twenty-fourth to the thirty-seventh paragraphs, inclusive, contained bequests of small sums of money, to be paid yearly to certain persons including the next of kin during life, with remainders to their children. The thirty-eighth paragraph provided for the payment of testator's debts, funeral expenses, for the erection of a monument and the repair of his burial lot in Macphela Cemetery. The paragraphs next following were as follows, to wit:

"39. In case of my demise before thirty days from the date of this my last will and testament, I give and bequeath to my

executors hereinafter named, all the moneys and bonds given aforesaid for charitable uses and purposes, upon the trust and confidence that they shall pay and transfer the same, to the said institutions ; and in case I may have made any mistake in the names of said institutions I direct my said executors named hereinafter to pay the aforesaid sums of money and transfer the aforesaid amounts of bonds to said institutions, as I have indicated the same in the catalogues of Messrs. Powell and Collins, the Philadelphia Medical Register and a slip from The Press, by ink marks made by my direction on the same, on or about the second day of December A. D. 1870, and which I have delivered to my executors for their guidance.

"40. As for all my estate of whatsoever kind which does not or cannot pass under the aforesaid provision of this my last will and testament, I give and bequeath the same to my executors hereinafter named, to be devoted and given by them to such institutions or uses, as they in their best judgment may consider the most compatible with the views and instructions which I have given to them, it being my intention that none of my property shall pass or be disposed of under the intestate laws, but that all of the same shall pass and be disposed of under the provisions of this my last will and testament.

"41. I appoint John K. McCurdy, gentleman, and Joseph S. Brewster, attorney at law, both of the city of Philadelphia, executors to this my last will and testament."

The codicil of July 3, 1872, changed one of the charitable bequests, and revoked several of the annuities and remainders.

On May 25, 1877, Joseph S. Brewster and John K. McCurdy, the executors named in the will, and who had accepted the trust, signed a deed, sealed with their seals, beginning:

" Having paid all the bequests in the last will and testament of the late Henry J. Stout to charitable institutions ($76,400) but the one to be paid on the death of Mrs. Mary Baker ($15,000) and secured that and all the others due upon the termination of lives in existence ($7,500) by approved investments, and that being the utmost extent (with exceptions hereinafter set forth) to which, after years of reflection, Mr. Stout wished his estate to be applied for either charitable purposes or the benefit of relatives, as he repeatedly declared to executors and as is evident from the fact, that he could have

increased his bequests, if he had desired, yet did not, though remarkable for not doing by others what he could do by himself, but on the contrary by his codicil diminished them, by revoking the items of his will numbered 29, 30, 34, 35, and 36: which act testator thought harmonized with item numbered 40 of his will by which he leaves the residue of his estate to his executors, with verbal instructions, which were intended among other things, to prevent the failure of any bequests to charitable purposes from mistake or through change or dissolution of the corporations entitled to the same, occurring after testator's death : said executors to substitute (as they did in one case) such institutions or uses, as they may consider the most compatible with the views and instructions given to them by the testator; and although said executors are not at liberty by these instructions to charge the estate of said testator with new bequests, yet they know it to be their duty (though it is against their interest) to give full effect to and carry out certain items in said will, as is hereinafter set forth, on which testator was imperative in his instructions and views, and said executors, John K. McCurdy and Joseph S. Brewster (without prejudice to their exclusive right to the estate given them by Mr. Stout, and in compliance with his wishes expressed to them about the same), do hereby accordingly make the following provisions charging the sums mentioned in the same against the residuary, so as aforesaid bequeathed to them, the said John K. McCurdy and Joseph S. Brewster, by the fortieth item of the said last will and testament of Henry J. Stout, deceased: said provisions having reference to matters that testator thought could be better arranged by verbal instructions to the executors than in any other way, and the same being especially designed to give ample powers to them in the case of fraudulent claims and of a creditor, who was a devisee (but whose devise might not be as large as he had expected), from attempting to increase its amount by refusing to pay his indebtedness, and thereby disturbing the settlement which testator had made of his estate, which Mr. Stout feared would be done if any persons knew beforehand, except the executors, how he had willed the residuary fund. The unreliable character of testator's securities was also a motive with him for these verbal instructions."

Statement of Facts.

The deed then proceeded to make the following "provisions:" $25,000, in addition to approved securities already pledged, as a permanent fund to secure payment to Mrs. Mary Baker the original $900 annuity and $300 a year, increased by the executors ; $5,000, in addition to approved securities already pledged, as a permanent fund to secure payment of all claims lawfully established against the decedent's estate within five years from his death ; $5,000, as a permanent fund to secure payment of such amounts as might be necessary to keep the monument of the deceased in perfect condition ; and $5,000, on the death of Mary J. Baker, to The Contributors of the Pennsylvania Hospital, the same being requisite to obtain a ward to be called Stout's Ward. The deed then proceeded:

" And the said executors, John K. McCurdy and Joseph S. Brewster, do by these presents, covenant, promise, and agree each with the other, as well for ourselves individually as for our heirs, that we do and will hold, consider, and treat all the estate and property bequeathed to us by item fortieth (40) of the last will and testament of Henry J. Stout, deceased, as if the same had been equally apportioned between us, share and share alike (to be held as our and each of our separate property), in proceedings in partition, by a court of competent jurisdiction (each of said shares to be charged equally for the payments aforesaid) ; and furthermore, to prevent all future disputes, we hereby remise, release, and forever quit all claims or demands and cause or causes of action which either may have against the other, from the beginning of the world to the day of the date hereof, so that each of us shall hold and possess his moiety of said estate bequeathed to us as aforesaid, to himself and his heirs forever free and discharged from the other, as tenants in severalty, and not as joint tenants.

" And we furthermore affirm and say that all and each of the facts and statements aforesaid are just and true, and we hereby obligate ourselves to stand to the same and to do and perform all the provisions aforesaid."

Joseph S. Brewster, the co-executor, died in 1879. The account exhibited by John K. McCurdy, the survivor, exhibited a balance of $96,101.01. John M. McCurdy and Clara S. Brewster, executors of Joseph S. Brewster, deceased, made claim that $56,101.01 of this balance should be awarded to

John K. McCurdy, surviving executor, and to the estate of Joseph S. Brewster, deceased, the co-executor, as entitled thereto under the provisions of said will.

The auditing judge, on June 19, 1887, filed a report, ruling: "That the additions made by this deed to the legacies given by the will, and the sums devoted to the settlements of the estate, were valid appointments, because they were within the instructions to which the testator referred; but he thinks that the provision by which the executors affected to appropriate the balance of the estate to their individual use, was invalid, because it was wholly unauthorized by the will. The language restricting the discretion which the testator conferred on the accountants was not precatory, but mandatory, and it imported a personal confidence in each of the executors which could not survive to the representatives of either of them: Children's Hospital's App., 10 W. N. 313. The executor of the will of Joseph S. Brewster, the deceased executor, has therefore no claim to any part of the distributive balance." The balance shown by the account, 96,101.01, was decreed to the accountant, $40,000 thereof to be applied in accordance with the specific provisions contained in the deed executed by the executors on May 25, 1877, and $56,101.01, "upon the trusts declared by the testator."

To the foregoing adjudication, the executors of Joseph S. Brewster, deceased, filed exceptions alleging in various forms of averment that the auditing judge erred in awarding the remainder of $56,101.01, "to the accountant upon the trusts declared by the testator," and in not awarding it "to the persons and beneficiaries named in the written declaration and agreement" made by the executors, dated May 25, 1877.

The said exceptions having been argued before the court in banc, FERGUSON, J., on December 31, 1887, delivered the following opinion:

In the recent case of Beck's App., 116 Pa. 547, the will gave to the executor "full and unlimited power and authority to appropriate or dispose of all the rest, residue, and remainder of my estate, real and personal, or the proceeds arising from the sale thereof, to such objects, persons, or institutions as in his

discretion shall be best and proper, as I have full confidence in his judgment, ability, and integrity in the premises." The executor under this power appropriated the whole residuary estate unto himself personally, and this court, under the circumstances, reluctantly following the English cases of Gibbs v. Rumsey, 2 Ves. & B. 297, and Morice v. Bishop of Durham, 9 Ves. 406, decided that, as the power of disposition vested in the executor by the testator was full and unlimited, he had the right to so appropriate the estate, which judgment the Supreme Court affirmed.

But the doctrine of Beck's Appeal ought, if possible, to be restricted rather than extended. Its practical application in that case was a disposition of the testator's residuary estate apparently very different from that which he intended himself, because, if he meant so to do, he could by his will easily have given his whole residuary estate to his executor by name, without referring to " objects, persons, or institutions." Besides, it is entirely repugnant to all our ideas of integrity and honesty that an executor should take to himself absolutely the estate which was given to him in confidence that he would appropriate it to other objects and purposes, and, in any case where such a disposition of a testator's estate is claimed, it seems to us that the strictest construction of the will should be invoked to prevent, if possible, its consummation.

In the case now under consideration the testator did not give to his executors " full and unlimited power and authority to appropriate " his residuary estate, but he limited and restricted their power of disposition to " such institutions or uses as they in their best judgment may consider the most compatible with the views and instructions which I have given to them," so that, the views and instructions given to his executors by the testator are in this case the limitation to any disposition of his residuary estate which they had the power to make.

These views and instructions were, it is alleged, communicated by the testator to his executors verbally. They, by a nondescript instrument in writing, executed under their hands and seals, and dated May 25, 1877, undertook either to put the views and instructions of the testator in some permanent shape for perpetuation as testimony, or else, if the residuary

clause of the will is to be considered as vesting in them a power of appointment subject to the views and instructions of the testator, then, perhaps, it may be considered as an attempt to exercise such power; but in either case the practical result attempted to be accomplished by this instrument is the appropriation to themselves of the whole of the testator's residuary estate, amounting to over $96,000 ($56,000 of which they take at once, and the balance upon the death of an annuitant), excepting $5,000 for a monument fund, and $5,000 to the Pennsylvania Hospital, which two sums they set apart for those purposes, according, as they alleged, to the views and instructions of the testator.

Now it is conceded that if the executors had by this instrument in writing positively and unequivocally declared that it was part of the testator's " views and instructions " communicated to them, that they were to divide his residuary estate between them, there would have been no one that could gainsay or deny the allegation; and, monstrous as it may seem, there would probably have been no way to prevent such a disposition of the testator's residuary estate. But while they are very careful to declare that the other dispositions made by them are in accordance with these " views and instructions," yet with regard to the balance, which they divide between themselves, they make no similar declaration, but simply divide it share and share alike, and release and quit-claim all demands which either may have against the other on account thereof.

It was contended that the words used by the executors near the beginning of this instrument in writing, to wit, " without prejudice to their exclusive right to the estate given to them by Mr. Stout, and in compliance with his wishes expressed to them about the same," are to be construed as a declaration upon their part that the " views and instructions " of the testator embraced a division of the balance of his residuary estate between his executors, as they now claim; but this quotation occurs in a part of the instrument so far away from that part of it by which the balance is divided between the executors, that it very probably has no reference whatever to the said division; and, even though it did refer to it, yet it is not a declaration made by the executors in such positive and une-

quivocal terms as to be entitled to consideration in construing an instrument of this kind. The executors are personally claiming almost the whole of this large residuary estate against the next of kin of the testator. They had it in their power, under their power of appointment, to express what they intended to say, with regard to the "views and instructions" of their testator communicated to them, in clear, explicit, and unmistakable language, free from doubt or uncertainty. They not only had it in their power, but it was undoubtedly their duty to have so expressed it. They did not do so, and not having done so, every intendment is to be construed against them. This is not the kind of a claim that is looked upon with so much favor that it can be established by inferences drawn from ambiguous and uncertain language. Nor are the claimants to be given the benefit of any doubt which arises from the language used by themselves. On the contrary every such doubt must be solved against them and in favor of the next of kin of the testator.

We think, therefore, that there has not been in this case a proper exercise of the power of appointment with reference to the portion of the testator's residuary estate which the executors attempted to appropriate to themselves, and that with regard thereto he died intestate and the same is to be distributed among his next of kin according to law.

The exceptions are dismissed, and the adjudication is confirmed, excepting that the balance, instead of being awarded to the executors upon the trusts declared in his will, will be distributed to the next of kin of the testator.

A formal decree having been entered, in accordance with the foregoing opinion, John M. McCurdy et al., executors of Joseph S. Brewster, took an appeal and assigned as error, in substance:

1. The decree that the appropriation of the balance of the estate by the executors of the deceased to their own use was invalid.

2. The decree awarding the balance, to wit, $56,101.01, to the next of kin of the testator.

John K. McCurdy, surviving executor of the deceased, also took an appeal, assigning as error, in substance:

1. The reversal of the decree of the auditing judge that the undisposed of residuary estate should remain in the hands of the surviving executor to be disposed of to the uses of the will.

2. The decree awarding the undisposed of residuary estate to the next of kin of the deceased.

*Mr. Geo. W. Biddle* (with him *Mr. Henry M. Dechert*), for the executors of Joseph S. Brewster, appellants:

1. The principles upon which an unexecuted trust, like a lapsed legacy or devise, results to the heirs or next of kin is, that as the original exclusion of the next of kin arises from a desire to effect a particular purpose, upon the failure of the purpose the motive for discriminating against them is gone, and they are entitled to the trust property; but when the purpose in making a particular disposal of property is stated in the will to be a desire to disinherit the heir or exclude the next of kin, then as the motive still remains, upon failure of the implied trust raised by the precatory words, the legatee or devisee will take absolutely: Halliday v. Hudson, 3 Ves. Jr. 210; Dawson v. Clark, 15 Ves. 409; Dawson v. Clarke, 18 Ves. 247; Cunningham v. Mellish, Prec. Ch. 31; Cook v. Hutchinson, 1 Keen 42; Hughes v. Evans, 13 Sim. 496; Dillage v. Greenough, 45 N. Y. 438; Batteley v. Windle, 2 Br. C. C. 31; Pratt v. Sladden, 14 Ves. 193; Gibbs v. Rumsey, 2 Ves. & B. 294; Clarke v. Hilton, L. R. 2 Eq. 815; In re Henslaw, 12 W. R. 1139 (34 L. J. Ch. 98); Romans v. Mitchell, 15 W. R. 552; Jewis v. Lawrence, L. R. 8 Eq. 345; William v. Arkle, L. R. 7 H. L. 646. It follows, then, that the testator obviously intended his executors to take an absolute estate, by virtue of the fortieth paragraph of his will.

2. The clause of the will referred to gave an absolute estate to the executors, and the court below erred in deciding that the disposition contained a mixture of trust and power; the former to be carried out for certain purposes, the latter to be exercised by the selection of certain objects, for whose benefit the trust was made. A trust is never to be presumed by a court in the construction of a will: Cook v. Fountain, 3 Swans. 585. Words accompanying a bequest, expressing hope, confidence, belief, or desire, that a particular application will

be made of a gift or bequest to an individual, are not sufficient to import a trust: Hopkins v. Glunt, 111 Pa. 290; Briggs v. Penny, 3 Mac. & G. 546; Stead v. Mellor, 5 Ch. D. 225; Gibbs v. Rumsey, 2 Ves. & B. 294; Wells v. Doane, 3 Gray 201; Beck's App., 116 Pa. 547; Sturgis v. Paine, 146 Mass. 354; Biddle's App., 80 Pa. 259; Paisley's App., 70 Pa. 153; Lambe v. Eames, L. R. 6 Ch. App., 597. The court below should have followed Beck's App., supra.

3. Assuming, however, for the sake of the argument, that the language of the will that the residue was to be "devoted and given to such institutions and uses as they in their best judgment may consider most compatible with the views and instructions which I have given to them," did create a trust, the court cannot compel or interfere with the exercise of discretion vested in the executors, unless there is a charge of fraud; Ingles's Est., 76 Pa. 430; Peterson's Est., 7 W. N. 507; Wilson's App., 1 W. N. 321. They were given the right to select as they in their best judgment should consider compatible with the testator's wishes. In the exercise of their best judgment they appointed to themselves. The right to do so cannot be questioned: Miles v. Knight, 12 Jurist 666.

*Mr. John G. Johnson,* for John K. McCurdy, surviving executor, appellant:

Whilst a man may die intestate, though he does not mean to do so, we contend that, where a testator expresses his intention not to do so, in connection with a clause which, as he states, passes and disposes of all his property and which is capable of being so construed, it will not lightly be presumed that he failed to pass and dispose of it.

1. The fortieth paragraph of the will is capable of two constructions. One of them is not sound, viz.: The one which holds that the clause confers the residuary estate upon the executors with absolute power to dispose of the same to their own use. The other construction compels them to distribute the estate in accordance with their judgment as to what is most compatible with certain views and instructions the testator gave them. And until it has been proved either (*a*) that no views and instructions were given, or (*b*) that the death of one of the executors renders it impossible to execute them,

there can be no intestacy, because there is an estate in the surviving executor upon a trust which can be performed.

2. If there is any proof that no views and instructions were given to the executors, it must be found in the deed of May 25, 1887, for no oral evidence of any sort was presented. It is impossible to gather such proof from the deed. Presumably the testator had communicated views and instructions broad enough to distribute the whole residue. And because the executors erroneously supposed that the will gave the residue to them absolutely, it will not do to hold that there were no views and instructions given to them, and that it is impossible for them to execute such instructions as were given.

3. The surviving executor is capable of distributing in accordance with views and instructions which were given, because : (a) The gift is to executors, not to individuals, and where this is the case the power survives : 1 Sugd. on Powers, 128 ; Brassey v. Chalmers, 4 DeG. M. & G. 528 ; 2 Perry on Trusts, §§ 493, 499, 502. (b) The estate is given as well as the power : Attorney-General v. Gleg, 1 Atk. 356 ; 2 Perry on Trusts, § 505. In the present case, the trust is an imperative power. Discretion is not given to alter a mode of distribution pointed out by the testator, if they shall see fit. The testator states that he has given certain views and instructions to his executors which will enable them to distribute his estate, and. he· directs them to distribute in accordance therewith. The death of one executor does not destroy the power of the survivor to exercise his judgment in conformity with them.

*Mr. Mayer Sulzberger*, for the next of kin, appellees :

1. The testator gave no beneficial interest to the executors. The words raised a trust, but if a trust is ineffectually created, or not expressed at all, or fails, the next of kin takes. The remark of the testator that he intended that none of his property should pass under the intestate laws, is of little value in interpreting a will. Such an intention can be expressed in one way, only ; by making a valid disposition of the whole estate by a will : Duffield v. Morris, 8 W. & S. 348. In examining the fortieth paragraph of the will in question, we find as to any residue, he intended (1) that his executors should not keep it ; (2) that it should go to certain institutions or uses ; (3) that

such institutions or uses should be in accordance with his own views and instructions as they had been communicated by him; (4) that he gave no discretion to the executors, except that of determining the application of his own views and instructions to certain particular institutions or uses.

2. The intent of a testator not to give the beneficial interest to his executors being established, all the learning concerning precatory words becomes useless. The technical term, precatory words, can only be applied to words accompanying a bequest which would be a complete gift of the beneficial interest, were the precatory words absent; but no case can be found wherein it was held that the testator's words of desire or request addressed to a person from whom he has unmistakably withheld the beneficial interest, can create anything but a trust. Such words, under such circumstances, though precatory in form, are not precatory words technically so called. Hopkins v. Glunt, 111 Pa. 287, expresses the distinction, and to the same effect are: Burt v. Herron, 66 Pa. 402; Fox's App., 99 Pa. 382; Taylor v. Martin, 20 W. N. 27. Where the trust fails, the next of kin takes: Morice v. Bishop of Durham, 10 Ves. 522; Le Marchant v. Le Marchant, L. R. 18 Eq. 414; Ingram v. Fraley, 29 Ga. 553; Yeat Cheah Neo v. Ong Cheng Neo, L. R. 6 P. C. App. 389; Briggs v. Penny, 3 Mac. & G. 557.

3. The distinction between the line of cases upon which the appellants rely and this case, is, that in the former the executor's discretion is absolute, while in the latter the testator's discretion dominates, and the executor has only a subordinate discretion to determine and fix the intent of the testator. The cases cited by the appellants fail to weaken this proposition; but there are cases which show that where the testator's intention is to be ascertained, the taker of the estate cannot enjoy it beneficially: Le Marchant v. Le Marchant, L. R. 18 Eq. 414; Ingram v. Fraley, 29 Ga. 553.

4. The surviving executor cannot again exercise the power, because: (a) The executors never had power to appoint for the residue. They admit by their deed that they could add nothing to the amounts given to charities or relations, and that they could introduce no new objects of the testator's bounty. For this reason, they inject into their deed an argument that

the residue belongs to them; that question, however is a question of law.  (*b*) If they had the power, they exercised it without reserving a right of revocation and reappointment: Duke of Portland v. Topham, 11 H. L. 32 ; Topham v. Duke of Portland, L. R. 5 Ch. App. 40.  (*c*) Because the necessity for the reappointment is based on the fraud of the executors on the power.   Where, as in our case, the appointee is also donee, he can never be in the position to make a second appointment: Williams's App., 73 Pa. 249.

OPINION, MR. JUSTICE MITCHELL: ·

I. The will of Henry J. Stout clearly created a trust as to the residuary estate disposed of by the fortieth clause. The language is "I give and bequeath the same to my executors . . . . . to be devoted and given by them to such institutions or uses, as they in their best judgment may consider the most compatible with the views and instructions which I have given them," etc.   What is given to the executors by this clause is not a discretion to distribute the estate according to their judgment, but a discretion to carry out the orders received from the testator.   He had his own intentions and scheme of distribution, and he meant that they should control the disposition of his estate to the end.   In the circumstances under which he made his will, being apparently apprehensive that his speedy death might avoid some of his bequests to charities, he was obliged not only to commit a large discretion to his executors as to the means to be employed to accomplish his wishes, but to trust entirely to their integrity for its exercise.   But his intent that they should follow his judgment, not their own, is entirely clear, and his language to that effect is as mandatory as the nature of the circumstances permitted.

This plain intent clearly separates the case from the class of gifts of an unlimited discretion of disposal, of which Beck's App., 116 Pa. 547, is the latest illustration.   In that case the testator gave his executor "full and unlimited power and authority to appropriate and dispose of the residue . . . . . to such objects, persons, or institutions as in his discretion shall be best and proper."   By this language he clearly substituted the judgment and will of his executor for his own, not only as

to the methods of disposal and appropriation, but also as to the objects themselves. The distinction between this and the mere discretion as to the disposition most compatible with the testator's instructions previously given, is too obvious to need further discussion.

II. There being then a clear creation of a trust, we have to inquire whether it has been fully carried out. What the trust was, could only be learned through the conscience of the executors. It was not put in writing but communicated to them, presumably orally, in testator's lifetime. The testimony of the executors was therefore the only evidence attainable as to the objects of the trust. The testator died in February, 1875, and on May 25, 1877, both the executors being then living, they executed a declaration of trust under their hands and seals, in which after reciting that they had paid all the legacies presently due, and secured those to come due after termination of life estates, they set forth, "that being the utmost extent (with exceptions hereinafter set forth) to which, after years of reflection, Mr. Stout wished his estate to be applied for either charitable purposes or the benefit of relatives, as he repeatedly declared to executors," etc. They then set forth that the residue is their own by law, but that nevertheless they deem it their duty, and therefore do appropriate and devote certain sums to purposes that they declare to be in accordance with testator's instructions, and then finally proceed to divide the remainder between themselves.

As already noted, the testimony of the executors is the only evidence of the objects of the trust. By a solemn instrument under their hands and seals, against their interests, that is, against their asserted legal right to the whole of the residue, they declare that they have fully carried out, or provided for, all the objects of testator's bounty, as expressed by him in his secret instructions to them. What further evidence is attainable? One of the executors is since dead, and to send the matter back now to the survivor to say whether there are still any unexecuted instructions of the testator, would be to do the vain thing of asking him to repeat his declaration made when the matter was fresh in his recollection, or to offer to self-interest a premium to stimulate memory to recall further instructions, which twelve years ago, he and his co-executor

solemnly asserted over their hands and seals, not to exist. A court of equity is not called upon to take any such step.

There being therefore a trust, and the purposes of it being exhausted, the balance remaining is not covered by the will, and as to it, however contrary to his desires, the decedent died intestate. The decree awarding this balance to the next of kin was correct.

Decree affirmed.