## Little Estate.

Argued January 10, 1961.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Louis Vaira*, with him *Robbin B. Wolf*, for appel-
lants.

*Abraham Pervin*, with him *Herbert B. Sachs*,
*Richard Hart Schwartz*, and *Sachs, Pervin, Kaufman
& Menzer*, for appellees.

*Lois G. Forer*, Deputy Attorney General, with her
*Anne X. Alpern*, Attorney General, for Attorney Gen-
eral as parens patriae.

OPINION BY MR. CHIEF JUSTICE JONES, March 23,
1961:

Louis Little, a well known Pittsburgh criminal
lawyer of many years' practice, died testate and un-
married on October 26, 1956, leaving to survive him
two sisters, Ethel Silverman and Pearl Kwalwasser,
and one brother, George Little.   At the audit of the
first and final account of the executors of the testa-
tor's will, questions were raised concerning the prop-
er construction of the document principally with re-
spect to the trust of the residuary estate as specified

in paragraph (15) of the will. It is the contention of the testator's heirs at law that the trust failed because of vagueness and for want of definiteness of purpose and that the decedent died intestate as to his residuary estate. The auditing judge resolved this question in a well reasoned opinion by concluding that a valid charitable trust had been testamentarily created, and entered a decree of distribution accordingly. The decedent's two sisters and brother filed exceptions which, after argument, the court en banc dismissed and approved the auditing judge's disposition of the controversy. The court en banc, however, modified the decree entered by the auditing judge to the extent of detailing the specifications of the trust's purposes and, as so modified, affirmed the decree of distribution. The decedent's two sisters and brother have separately appealed.

We agree with the court below that the testator by paragraph (15) of his will created a valid and enforceable charitable trust for the purpose of memorializing his deceased brother Hyman and his deceased parents by the trustees devoting trust funds to useful charitable purposes in memory of the testator's deceased brother and parents. In support of this conclusion, we cannot do better than quote the cogent opinion of the auditing judge as follows: "The fifteenth paragraph of the decedent's will provides: 'The balance of my Estate, real, personal and mixed is to be deposited, after payment of taxes in a fund. From this Fund there must be a suitable memorial for my saintly brother Hyman & my wonderful parents Lizzie & Jacob Little. I entreat my executors to seek advise from good friend Leon Falk as to the nature of the memorials. However I do not want this money to be governed or used by social workers in any manner whatsoever as I have seen to much abuse, extravagance, duplication and more, by them.'

"Although this provision is not placed at the end of the decedent's will, and he makes other dispository provisions thereafter, the language therein contained clearly manifests that he intended it to be a residuary clause which disposes of his entire residuary estate.

"The testator intended in this provision to create a trust of his residuary estate as a memorial to his deceased brother Hyman and his deceased parents. He intended his executors to be the trustees of this trust. No language is contained in the provision which spells out the specific use to be made of the trust funds, or imposes specific duties on his trustees in relation thereto. The testator's heirs at law infer, by reason of this omission, that he did not intend to limit the use of the trust funds to charitable uses, and, by reason of his failure to impose specific duties on his trustees in relation thereto, the trust is a dry trust. They conclude that the trust fails and the testator died intestate as to his residuary estate, and they, his heirs at law, take under the intestate act.

"The writer cannot agree that the omission of language in this provision spelling out the use the testator intended should be made of the trust fund, per se, authorizes his trustees to use it for any purpose, charitable or otherwise. It may be argued with equal cogency that, since the testator failed to specifically authorize the use of the trust fund for non-charitable uses, he intended to limit its use to charitable uses. The testator's intent is to be ascertained from a consideration not only of the language contained in this provision but also from his will in its entirety, and the circumstances which attended him when he prepared and executed his will.

"The testator was for many years a practitioner at the bar of this county. He was an outstanding criminal lawyer. In the latter years of his life he devoted less of his time to the practice of law, and an

increasingly greater part to public affairs and philanthropy. He died approximately one year and two months after he prepared and executed his will. He had never married. He was survived by two sisters and a brother, his heirs at law.

"The will is holographic. The testator was ill when he prepared and executed it. Its content evidences that when he prepared it he realized that his life was drawing to a close. It is an enlightening instrument, for in it the testator not only provides for the disposition of his material wealth but also expresses the philosophy which motivated his life. His will repeatedly expresses his veneration and love for his deceased brother Hyman and his deceased parents. In the third paragraph he refers to his 'gentlemanly father' and his 'brilliant ambitious mother'. He states: 'They are both in heaven, waiting, for me—if there is such a place'. In the sixteenth paragraph he provides: 'I want to be buried in an inexpensive casket and a vault next to my brother Hym. & dearest pal I ever had. He was a paragon'. In paragraph 22 he states: 'Of everything that meant good in life, I insist that his name Hyman Little be honored in death by my executors. In Roosevelt Acres, which we own is a plot we intended to give to the public as a park or playground. I direct my executors to buy this from my brother and sister and have my friend the Mayor dedicate this to Hyman Little.' In the fifteenth paragraph, which we are construing, he refers to 'my saintly brother Hyman & my wonderful parents Lizzie & Jacob Little.'

"In other provisions in his will the testator makes gifts to members of his family, employees, and friends.

"Louis Little was of the Jewish faith, which includes in its primary tenets the performance of charity and the remembrance of deceased members of the

family. The active interest of Louis Little in philanthropy during his lifetime, the tenets of his faith, his demonstrated affection for his deceased brother Hyman and his deceased parents, his testamentary plan for the disposition of his estate, the emotional tone of his will, the magnitude of his residuary estate, which comprises the greater part of his estate, which is inventoried at approximately $1,000,000, and, finally, his purpose in creating the trust from his residuary estate as a memorial to his deceased brother Hyman and his deceased parents, clearly demonstrate that Louis Little intended the trust fund to be used for charitable uses and to limit its use to charitable uses, and the writer would so hold if there were no other evidence bearing on his intent. However, any probability that he intended otherwise is negated when the language contained in the provision being construed is considered in the frame of reference provided by the factors pointed out above.

"During his participation in philanthropy he was on occasion associated with Leon Falk. Leon Falk has devoted his life to philanthropy. His reputation as a philanthropist is too well known in this community to need narration. Since Leon Falk is well-informed as to charitable enterprises, his choice by the testator to be advisor to his trustees as to the nature of the memorials, i.e., the use of the trust funds, clearly evidences that he intended the trust funds to be used for charitable uses. His direction in the last sentence of this provision, that the trust fund should not be governed or used by social workers, is likewise significant. Social workers ordinarily are engaged in philanthropic enterprises. His interdiction of the use of the trust fund by social workers evidences that he intended the trust fund to be used for charitable uses, but did not want social workers to be employed in or control its use. The inclusion of these directions clear-

ly evidences that the testator intended to limit the use of the trust fund to charitable use.

"The law looks with favor on bequests to charity. Voegtly Estate, 396 Pa. 90; Conlin Estate, 388 Pa. 483. Since Louis Little was never married, his parents are deceased, he had no dependents, and his next of kin are his sisters and a brother, there is no operative countervailing rule of will construction.

"For the reasons stated in this discussion it is the opinion of the writer, and he so finds, that the testator created a charitable trust from his residuary estate as a memorial to his deceased brother Hyman and his deceased parents, and limited the use of the trust fund to such charitable uses as his trustees should determine would provide a suitable memorial to their memory. This trust does not fail by reason of the failure of the testator to prescribe the duties of his trustees. Their duties are defined by the law."

The appellants' contention that the auditing judge improperly questioned Leon Falk concerning the meaning of the words "memorial" and "memorials", as used by the decedent in his will, lacks merit. Even if the court's interrogations were deemed to constitute technical error, it obviously would be harmless in the circumstances. There was no jury to be misled by inadmissible testimony and the auditing judge, as his opinion plainly reveals, did not rely upon Falk's testimony in construing the testator's intended meaning of the words "memorial" and "memorials." In the will itself, the decedent *entreated* his executors to seek advice from his "good friend Leon Falk as to the nature of the memorials." What the court understandably sought to ascertain in its inquiries of Falk was what the latter had in mind as possible memorials and what he had suggested, as such, in consultation with the executors. At no time did the auditing judge abdicate his province of determining whether

what Falk had suggested to the executors as a possible memorial qualified as such as a matter of law.

As for the testator's intention in the use of the words "memorial" and "memorials", what we said in *Funk Estate,* 353 Pa. 321, 325, 45 A. 2d 67, may pertinently be reiterated, viz., "if there be any doubt, a testator is presumed to intend the meaning which makes his gift legally effective rather than one which renders it nugatory and void: Anderson's Estate, 269 Pa. 535, 538, 112 A. 766, 767; Wright's Estate, 284 Pa. 334, 342, 131 A. 188, 191."

The appellant, Ethel Silverman, also contends that paragraph (19) of the decedent's will creates a trust for her of $10,000, that the trust is dry, and that she, as the cestui que trust, is entitled to receive the $10,-000 forthwith. The 19th paragraph of the will reads as follows: "To my sister Ethel Silverman of Miami, who now has a comfortable estate, I order my Executors to keep Ten Thousand for her for a period of ten years. If at that time or during that time she does not need it, then it must be disposed of as hereinafter designated." The court below held that this provision created a valid conditional gift to Ethel Silverman to be held in trust, necessarily, to await the possible happening of the specified condition. With that conclusion we also agree.

In support of her contention, the appellant relies on *Lowitz Estate,* 360 Pa. 91, 61 A. 2d 342. But, as the court below correctly pointed out, "Lowitz Estate, supra, is clearly distinguishable on its facts from the instant case. In Lowitz Estate the decedent made a gift of ten thousand dollars in trust for his sister, Edith Lowitz. He attached no condition to the gift and imposed no duties on his trustee in relation thereto. The trust was clearly a dry trust. In the instant case, however, as is clearly shown by the language of

the provision, the testator considered the possibility that, although at the time he wrote his will Ethel Silverman had no financial need, such need might arise in the future. He made a conditional gift to her. The condition is that within a period of ten years after his death she need financial assistance in an amount not exceeding ten thousand dollars. He directed his executors to hold the sum of ten thousand dollars for a period of ten years and to pay that part or all of the ten thousand dollars to her if during that period of time her financial position should change and she should be in need of part or all of the gift. This is a valid and enforceable condition and, unlike the trust created for Edith Lowitz in Lowitz Estate, this trust is not a dry trust. Although the testator provides that if at the end of ten years or within that period of time 'Ethel Silverman does not need it then it must be disposed of as hereinafter designated', the provisions which follow thereafter make no disposition of the ten thousand dollars in the event it is not needed by Ethel Silverman. A reading of the decedent's will in its entirety, as has been previously discussed, clearly evidences that the decedent intended the fifteenth paragraph of his will to dispose of his residuary estate. If all or part of the ten thousand dollars is not needed by Ethel Silverman it will fall into the residue and be distributed under the fifteenth paragraph of the decedent's will."

The court en banc amended the decree of distribution entered by the auditing judge by adding detailed specifications of the manner and ways in which the funds of the trust, created by paragraph (15) of the will, could be disbursed in carrying out the testator's charitable intent. While the descriptive additions of permissible uses of the trust fund enumerated in the final decree may have been unnecessary, they do not impair the charitable character of the trust and insure

that the uses made of the fund by the trustee in furtherance of the testator's purpose will be charitable.

Decree affirmed at appellants' costs.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

Paragraph 15 of Louis Little's will reads: "The balance of my Estate, real, personal and mixed is to be deposited, after payment of taxes in a fund. From this Fund there must be a suitable memorial for my saintly brother Hyman and my wonderful parents Lizzie and Jacob Little. I entreat my executors to seek advise from good friend Leon Falk as to the nature of the memorials. However I do not want this money to be governed or used by social workers in any manner whatsoever as I have seen to much abuse, extravagance, duplication and more, by them."

At first glance, this testamentary provision might seem to be invalid for want of definiteness. What kind of a memorial did Louis Little intend for his brother and parents? Was it to be a monument? This is unlikely, since in the same paragraph he speaks of social workers, and social workers would certainly have nothing to do with monuments. Was the memorial to be in the nature of a trust for charitable enterprises? But in that event, how could social workers be entirely excluded from the operation of the trust?

In the face of these self-contradicting propositions, it could be argued that the entire provision should fail because of vagueness and that the residue of the estate should devolve according to the law of intestacy. But would such a disposition be in accordance with law, and would it be just in the light of all the circumstances attendant upon the making of the will? In *Hope Estate*, 398 Pa. 470, this Court said: "The pole star in the interpretation of every will is the intention of the testator. This intention is to be determined from the language of his entire will con-

strued in the light of the circumstances surrounding him when he made it."

When one reads what the testator said in the rest of the will, he can come to no conclusion other than that Louis Little wished, more than anything else, to express, through the medium of his estate the love and affection he bore toward his "saintly brother Hyman" and his "wonderful parents Lizzie and Jacob Little." Thus, it must be obvious, after reading the will as a whole, that Mr. Little used the word "memorial" not in an architectural, but in a spiritual sense.

It is particularly to be noted that Mr. Little requests, in fact "entreats", in the fulfillment of the provisions in Paragraph 15, that the executors seek the advice of Leon Falk. Leon Falk is known not as a contractor in the business of erecting tombs and shafts of marble, but as one whose central motive in life is to lead and participate in charitable movements. Therefore, it must be clear that Mr. Little desired that his brother and parents be memorialized, that is, commemorated, through works of charity. He undoubtedly assumed, not without reason, that a perpetuating charity would reach people's hearts, in veneration of his brother's memory, more enduringly than would a structure of steel, iron, brick and marble.

To nullify Paragraph 15 of Mr. Little's will would be to nullify the most frequently expressed desire in the will. And if that were to be done, what would happen to the pole star shining in *Hope Estate,* supra? In the 16th paragraph of the will Mr. Little wrote: "I want to be buried in an inexpensive casket and a vault next to my brother Hym. & dearest pal I ever had. He was a paragon."

In the 22nd paragraph he said: "Of everything that meant good in life, I insist that his name Hyman Little be honored in death by my executors. In Roosevelt Acres, which we own is a plot we intended

to give to the public as a park or playground. I direct my executors to buy this from my brother and sister and have my friend the Mayor dedicate this to Hyman Little."

Throughout his last will and testament, Louis Little's love for his predeceased brother runs like a dulcet melancholy strain constantly recurring in a symphonic requiem. How can this steadfast attachment be ignored in any interpretation of the will? There is no association in life more precious and endearing than that of brothers, especially if their ages are separated only by a short span of years. Brothers joyfully play together in boyhood, eagerly they study together at school, ambitiously they plan together in youth, and on the threshold of their careers they counsel one another, as no teacher or sage can ever instruct a pupil.

The happiness of each brother is always doubled in the person of the other. Their individual burdens of care are always easier to carry because each assists the other. And if disappointment darkens the path of one, the other erases the shadows for him, and both raise their eyes to new and ever-brighter horizons.

No two persons understand one another as do brothers. No two persons confide and have as much faith in each other as do brothers. The relationship between brothers is one of sweetness, sanctity, and even saintliness. And if, while the sun is still in the sky, one falls prior to the other, the survivor lives on, but half of him is buried with the one who has fallen.

The appellants admit in their brief that "the testator's intent must be ascertained by a consideration of the entire Will, which must be read in the light of the circumstances surrounding him when he made it, and that the intention of the testator is the polar star in the construction of Wills."

However, after making this concession, the appellants turn off the light of the polar star and, in the

ensuing obscurity, attribute to the testator what was obviously at the opposite pole of his intentions. They insist that Louis Little meant by "memorial" a monument of bronze or stone and that he was not interested in charity. They even say that his will "lacks the charm of simplicity." But what could be simpler and more heart-appealing than the testator's request: "I want to be buried in an inexpensive casket and a vault next to my brother Hym, and dearest pal I ever had."

In McGlathery's Estate, 311 Pa. 351, 355, this Court said that in interpreting a will " 'you may place yourself, so to speak, in the testator's arm chair and consider the circumstances by which he was surrounded when he made his will, to assist you in arriving at his intention.' ".

I would say that it is not enough to sit in the testator's armchair. One must enter into his heart via the words spoken by him in perhaps the most solemn moment in man's consciousness—that one moment when one contemplates the long road into eternity on the way to meeting with those who have gone before.

It is impossible to look at Louis Little's will without reading into his faltering words the boundless devotion he cherished toward his brother and his unyielding resolve that the wealth he left behind him, which he had not otherwise disposed of, was to be used to perpetuate the memory of that brother. And in what manner? It was to be used via the most sacred objective in life next to one's love for one's own, and that, of course, is Charity.

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent. Testator never made a gift of his entire residuary estate. A testator's intent—and this is doubly so where, as here, the testator was a lawyer and the proposed interpretation of his Will will disinherit

his heirs—is to be determined from the meaning of his language, i.e., what he said and not what a Court thinks he meant to say, or would or should have said if he could have foreseen the existing circumstances: *Hope Estate,* 398 Pa. 470, 473, 159 A. 2d 197; *Bigony Estate,* 397 Pa. 102, 104, 152 A. 2d 901; *Saunders Estate,* 393 Pa. 527, 529, 143 A. 2d 367; *Cannistra Estate,* 384 Pa. 605, 607, 121 A. 2d 157; *Sowers Estate,* 383 Pa. 566, 570, 119 A. 2d 60; *Britt Estate,* 369 Pa. 450, 454-455, 87 A. 2d 243; *Conner's Estate,* 346 Pa. 271, 273, 29 A. 2d 514; *Ludwick's Estate,* 269 Pa. 365, 371, 112 A. 543. In *Hope Estate,* supra, the Court said (pages 473-474):

"The pole star in the interpretation of every will is the intention of the testator. This intention is to be determined from the language of his entire will construed in the light of the circumstances surrounding him when he made it. 'In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words: Conner's Estate, 346 Pa. 271, 29 A. 2d 514; Ludwick's Estate, 269 Pa. 365, 112 A. 543': Britt Estate, 369 Pa. 450, 454-455, 87 A. 2d 243. See to the same effect: Beisgen Estate, 387 Pa. 425, 430, 128 A. 2d 52."

DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

The court below construed the fifteenth paragraph of the decedent's will as manifesting an intent on decedent's part to dispose of his entire residuary estate and to create thereof a trust for charitable purposes as a memorial for certain relatives. A majority of this

Court now affirms this construction; from that action, I must register my dissent.

Mr. Little *may* have intended to create a trust for charitable purposes of his entire residuary estate but, in my opinion, the language employed by him fails to demonstrate such intent. Nor do I feel that such intent can be gleaned from a review of the personal life and expressed affections of the decedent upon which the majority of this Court have relied most strongly. The conclusion arrived at by the majority of this Court rewrites paragraph fifteen to accomplish what it believes Mr. Little intended. Absent language in this will clearly expressive of such an intent, I stand opposed to incorporating into paragraph fifteen what Mr. Little *may* have intended.