Thompson Will.

Argued September 30, 1964. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

*T. P. Dunn,* with him *John M. Wolford,* and *Dunn
& Wolford,* for appellant.

*Barney Bernard,* with him *Evans, Johnson, Scar-
pitti & Bernard,* for appellee.

*John A. Blackmore,* and *Blackmore & Grieshober,*
for appellee.

OPINION BY MR. JUSTICE JONES, January 5, 1965:

Where a testator in a concededly valid will gives to a named executor his residuary estate for "distribution to and amongst such local charities as he [the executor] shall determine in his sole discretion", does the executor in his representative capacity, under the Register of Wills Act of 1951,[1] have the right to appeal from the probate of a codicil to such will which codicil completely cancels the gift of the residuary estate made in the will? Such constitutes the *primary* issue on this appeal.

On September 19, 1959, Robert M. Thompson (testator) made a will wherein he appointed L. S. Mosher as sole executor. In the 19th paragraph of that will, testator gave the "executor" certain personal effects, "in trust nevertheless, to distribute the same among such persons and in the manner as indicated by a memorandum to be enclosed in the envelope with this will but not to be recorded as a part of it". Under the 20th paragraph, testator gave the "executor" all the residuary estate[2] "for the purpose and administration and distribution to and amongst such local charities as he shall determine in his sole discretion in such amounts and such proportions as he shall choose, and I specifically provide that his conduct in such division of my residuary estate shall not be questioned."

---

[1] Act of June 28, 1951, P. L. 638, §208, 20 P.S. §1840.208 provides: "(a) When allowed. Any party in interest who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court. . . .: Provided, That the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it. . . ." On the right of appeal to an appellate court, see: Act of August 10, 1951, P. L. 1163, §771, 20 P.S. §2080.771.

[2] Consisting of the bulk of an estate valued in excess of $700,-000.

Subsequent to testator's death on March 21, 1963, Bronte Greenwood, a member of the Philadelphia bar,[3] petitioned the Register of Wills of Erie County to probate the 1959 will *and* a codicil thereto, both instruments were probated and letters testamentary were issued to Greenwood, the codicil-named executor.

The codicil—the validity of which is attacked—purports to have been executed on April 26, 1962. Insofar as presently pertinent,[4] this codicil cancels the 19th and 20th paragraphs of the 1959 will and, in substitution thereof, testator in the codicil purports to give the residue of his estate "unto [his] loyal and faithful friend, Myra Parkhurst, to be owned outright and in fee by her", and he also gave her "the power to designate distribution therefrom to and amongst any charitable organizations she may desire and in any amounts she may desire" and he specifically provided "that her conduct in such designation shall not be questioned, nor shall she be required to make any such designation".[5]

---

[3] Greenwood witnessed the 1959 will.

[4] Under the 4th paragraph of the will, testator permitted his housekeeper, Mary Verstreet, to occupy certain realty during her lifetime and spinsterhood and directed that the property, after her death, be sold and the proceeds given to a charity, St. Barnabas House, North East, Pennsylvania: Item I of the codicil cancelled the 4th paragraph of the will and substituted therefor a new paragraph wherein testator gave his "stocks, corporate bonds, and U. S. Government Bonds" to one Myra Parkhurst. Under the 16th paragraph of the will certain valuable antique items were given to the Erie Public Museum, owned by the Erie City School District; this gift was cancelled by Item V of the codicil.

[5] There is no doubt that if the codicil is valid, testator's testamentary disposition to charities of his residuary estate under the will is completely nullified. Unlike the duty imposed upon the executor, by the terms of the will, to dispose of the residuary estate to local charities in Erie, the codicil gives the residuary estate outright and in fee to Myra Parkhurst and any disposition of any part of the residuary estate to charities—*any* charities as

On July 23, 1963, Mosher, "not as executor but as beneficiary under the nineteenth paragraph and as the party having the duty and authority to distribute the bulk of [testator's] estate among Erie charities under the twentieth paragraph of the will",[6] appealed from the probate of the codicil to the Orphans' Court of Erie County. The basis of his appeal was two-fold: (a) that testator,—86 years old at the time—, was not of sound mind when the codicil was executed and (b) that the codicil was procured by undue influence exerted upon decedent by Myra Parkhurst and "perhaps by others named in said writing".[7]

Preliminary objections filed by Myra Parkhurst averred: (a) that Mosher lacked standing to appeal from the probate of the codicil and (b) that the appeal petition failed to set forth specifically the facts relied upon to sustain the several charges. Notice was given by Mosher to the Attorney General as parens patriae and St. Barnabas House and Erie City School District were permitted by the court to join as petitioner-appellants.

The court below sustained the preliminary objections[8] as to Mosher on both grounds and dismissed Mosher's appeal. From that decree Mosher has taken this appeal.

---

contrasted with *local* charities—is made dependent on the whim of Myra Parkhurst and is in no sense mandatory. Under the codicil charity could well begin at home for Myra Parkhurst. Cf. *Wilbur's Estate*, 334 Pa. 45, 78, 79, 5 A. 2d 325.

[6] Averments in paragraph 2 of the petition of appeal from probate.

[7] The petition further avers that Myra Parkhurst, an Erie non-resident, came to Erie in April 1962; that within a month she moved into testator's home; removed his housekeeper; secured his power of attorney; entered testator's safe deposit boxes; secured the right to draw his checks; secured the execution of the codicil; then was ordered out of his home by testator. Myra Parkhurst was not related by blood to testator.

[8] In an opinion labeled "Opinion No. 3".

Under our case law and the Register of Wills Act, Act of June 28, 1951, P. L. 638, §208, 20 P.S. §1840.208, an executor, *as such,* lacks standing to prosecute an appeal from the decree of a Register of Wills: *Faust Estate,* 364 Pa. 529, 531, 73 A. 2d 369; *Hand's Estate,* 288 Pa. 569, 136 A. 864; *Reese's Estate,* 317 Pa. 473, 177 A. 792. As a prerequisite to such appeal, a fiduciary, be he executor or trustee, must fall within the class of an "aggrieved" party in interest or one "whose estate or trust is so aggrieved": Register of Wills Act, supra.

Initially, we must inquire into the *nature* of the gift provided in the 20th paragraph of the will to determine Mosher's *status* thereunder. This gift was of the entire residuary estate and the language employed unequivocally indicates that the gift was not to Mosher but to "local charities" of Erie. *Which* of the class of "local charities" was to receive and *how much* each of the "local charities" selected was to receive were expressly left by testator to Mosher's determination, choice and discretion and his conduct in making such determination and choice and in the exercise of his discretion was not to be questioned.[9] Under such testamentary provision, there can be no doubt of the charitable nature of the gift, that the executor, although not so eo nomine, was in fact a *trustee* to carry out the purposes of the gift and that the charitable objects within the class of "local charities" remains unascertained until selected by Mosher.

Almost a century ago, this Court speaking through Justice (later Chief Justice) SHARSWOOD, in *Helfenstein's Estate,* 77 Pa. 328, 331, said: "There is no prescribed form for the declaration of a trust." Such is

---

[9] As was said in *Domestic and Foreign Missionary Society's Appeal,* 30 Pa. 425, 435: ". . . individual designation is left to the trustee, who is the dispenser of the bounty, and who is under obligation to dispense within the class".

still the law. In *Smith's Estate,* 144 Pa. 428, 437, 22 A. 916, this Court quoted with approval from Bispham's Equity (p. 65) : " 'Three things,' it has been said, 'must concur to raise a trust, sufficient words to create it, a definite subject, and a certain or ascertained object;' and to these requisites may be added another, viz., that the terms of the trust should be sufficiently declared" and then the Court added "any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing." See also: *Ranney v. Byers,* 219 Pa. 332, 68 A. 971; *Evans Estate,* 372 Pa. 284, 93 A. 2d 683. Appellee contends that the omission in the 20th paragraph of the words "in trust" or "trustee"—especially in view of the presence of the words "in trust" in the 19th paragraph—negatives the existence of a trust. Such contention lacks merit. While the presence or absence of the words "in trust" or "trustee" must be given consideration, the presence or the absence of such words is not controlling in determining the existence or nonexistence of a trust: *Tunnell's Estate,* 325 Pa. 554, 190 A. 906; *Sheets' Estate,* 52 Pa. 257.

The provisions in the 20th paragraph are not novel. We have construed similar provisions as creating charitable trusts and considered the executors therein to be acting in the capacity of trustees: *Kinike's Estate,* 155 Pa. 101, 25 A. 1016 (testator directed the executors "to distribute [the residuary estate] among such charitable institutions, and in such proportions as they in their discretion deem proper") ; *Murphy's Estate,* 184 Pa. 310, 311, 39 A. 70 (testator directed the residuary estate "be divided among such benevolent, charitable and religious institutions and associations as shall be selected by my executors, or their successors") ; *Dulles's Estate,* 218 Pa. 162, 164, 67 A. 49 (testatrix directed her executors "to pay over, appropriate, dispose of and distribute [the residuary es-

tate] . . . among such religious, charitable and benevolent purposes and objects or persons or institutions" as testatrix would specify in writing, or, if she did not so specify, then in the executors' discretion).[10]

A study of the 20th paragraph of the will indicates that, while Mosher is *nominally* an executor, *actually* he is a trustee clothed with the duties of a trustee.[11] *In such posture,* we determine his standing to appeal from the probate of this codicil.

If the codicil stands, the provisions of the 20th paragraph are cancelled and the charitable trust therein provided never comes into existence. To the extent that the codicil prevails, the testator's intentions expressed in the 20th paragraph of this concededly valid will are frustrated, the trust fails and the as-yet-unascertained "local charities" are deprived of the residuary estate. Such "local charities" are without standing to appeal (cf. *Atlee Estate,* 406 Pa. 528, 178 A. 2d 722), although the Attorney General as *parens patriae* may represent their interest. Under such circumstances, does Mosher, in his capacity of trustee, have standing to appeal from the probate of this codicil destructive of the trust, the testator's expressed intent and the "local charities" interests?

---

[10] See also: *Schleicher's Estate,* 201 Pa. 612, 51 A. 329; *DeSilver's Estate,* 211 Pa. 459, 60 A. 1048; *Kimberly's Estate (No. 1),* 249 Pa. 469, 95 A. 82; *Barnwell's Estate,* 269 Pa. 443, 112 A. 535; *Thompson's Estate,* 282 Pa. 30, 127 A. 446; *Voegtly Estate,* 396 Pa. 90, 151 A. 2d 593; *Little Estate,* 403 Pa. 247, 168 A. 2d 738. Cf. *Beck's Appeal,* 116 Pa. 547, 9 A. 942; *Watts's Estate,* 202 Pa. 85, 51 A. 588.

[11] What testator gave Mosher was not a discretion to distribute the residuary estate willy-nilly. On the contrary, testator clearly indicated his intent that the "local charities" of Erie were to be the beneficiaries of the residuary estate and testator entrusted Mosher with the duty to carry out such purpose, leaving to him the *selection* of the particular "local charities" and the *division* among such "local charities". Cf. *McCurdy's Appeal,* 124 Pa. 99, 112, 113, 16 A. 626.

Other jurisdictions have been presented with this problem. *Estate of Ferrall,* 33 Cal. 2d 202, 200 P. 2d 1, 3, held that one acting as trustee may appeal in his representative capacity if it is necessary to prevent the termination of a trust, the Court (speaking through Justice TRAYNOR) stating that such appeal was the "performance of a duty by the trustees to protect the trust against an attack that goes to the very existence of the trust itself." In *Toledo Trust Co. v. Farmer,* 165 Ohio St. 378, 135 N.E. 2d 356, 357, the Court held that where "a judgment affects or threatens the existence, validity or continuance of a trust or prevents the trustee from discharging his duties thereunder, or where such judgment threatens to defeat the purpose of the trust, the trustee, although having no personal interest in the litigation, is not a disinterested party, is aggrieved by the judgment and may appeal therefrom in his fiduciary or representative capacity." In *Estate of Bunn,* 33 Cal. 2d 897, 206 P. 2d 635, where the residuary estate was to be "sold and given to a worthy charity selected by my executors" and the court below held that no charitable trust had been created, the Court held that, since the decree went to the very existence of the trust, the executors had not only the right but the duty to protect the trust.[12]

A case most apposite to the case at bar is *O'Leary v. McGuinness,* 140 Conn. 80, 98 A. 2d 660. Testatrix in her will gave her residuary estate "to [her] executors" to be paid by them to such charities as they in

---

[12] See also: *Howard Savings Institution v. Peep,* 34 N.J. 494, 170 A. 2d 39; *Jackson v. Johnigan, Jr.,* 110 Ohio App. 532, 170 N.E. 2d 79; *In Re Huling's Estate,* 105 Colo. 475, 99 P. 2d 194; *Waterbury Trust Co. v. Porter,* 130 Conn. 494, 35 A. 2d 837; *Stein v. La Salle Nat'l Bank,* 328 Ill. App. 3, 65 N.E. 2d 216; *Cheever v. Washtenaw Circuit Judge,* 45 Mich. 6, 7 N.W. 186; *Ripley v. Brown,* 218 Mass. 33, 105 N.E. 637. Contra: *Freeman v. De Hart* (Mo. App.), 303 S.W. 2d 217; 4 Am. Jur. 2d §§206, 213; 6 A.L.R. 2d 152.

their absolute discretion shall unanimously select or in "the event that [her] charitable purpose, as above stated, fails" then testatrix gave the residuary estate to the executors or the survivor of them absolutely, "confident that they . . . will carry out [her charitable] wishes." A year later a codicil was made which changed executors and modified the will by providing that only such charities might be selected as are organizations, gifts to which are deductible under the federal estate tax. The Court, noting that the provisions of the will created a charitable trust even though the word "trust" was not contained therein and holding that the executor under the will could appeal from the probate of the codicil, stated (p. 664) : "The law, therefore, is well settled that a trustee under a will has a duty to protect the interests of the beneficiaries of the trust. Where those interests are adversely affected by a later will or codicil, he is aggrieved by a probate decree allowing the later will or codicil so that he may appeal therefrom. A trustee of a charitable trust has a special duty to protect the interests of the beneficiaries because the real beneficiaries are unascertainable and, therefore unable to protect themselves. [citing a case]. The plaintiff [executor] is a trustee who is in that position. It can make no difference that the attorney general may also have the right of appeal, as suggested by the defendants. That does not relieve the plaintiff of his duty. His is the primary obligation".

We need not rely, however, on these decisions from other jurisdictions, compelling in their reasoning as they are, because the language of our statute (Register of Wills Act, supra), i.e., "a fiduciary whose estate or trust is so aggrieved" and the rationale of our case law (*Elliott Estate,* 388 Pa. 321, 325, 131 A. 2d 357; *Neafie's Estate,* 199 Pa. 307, 49 A. 129) compels our recognition of Mosher's right to appeal from the pro-

bate of this codicil which cancels the charitable trust. Cf. *Gulden Estate,* 86 Pa. D. & C. 262; *Hetzel's Estate,* 37 Pa. D. & C. 440, 446, 447.

The fact that the Attorney General, as parens patriae, represents the interests of the unascertained "local charities" does not foreclose Mosher's right of appeal.[13] The Attorney General represents the public interest in a charitable trust rather than a particular class of potential beneficiaries and his representation does not affect Mosher's rights: *Howard Savings Institution v. Peep,* 34 N.J. 494, 170 A. 2d 39; *Ripley v. Brown,* 218 Mass. 33, 105 N.E. 637; *O'Leary v. Mc-Guinness,* supra.

In sustaining the preliminary objections upon the ground that Mosher lacked standing to appeal from the probate of the codicil, the court below erred and its decree in this respect must be reversed.

Certain other matters remain for our consideration. The preliminary objections further questioned the sufficiency of Mosher's appeal petition on the ground that the petition did not *allege* sufficient factual support for its averments of lack of testamentary capacity and undue influence. The court below, relying on *Shaffer's Estate,* 332 Pa. 225, 2 A. 2d 764, and *Hochberger Estate, No. 2,* 72 Pa. D. & C. 454, held that the appeal petition was deficient in this respect and upheld the preliminary objections as to Mosher on this

---

[13] In the case at bar, the Attorney General took no appeal. Mosher argues that the Attorney General is faced with a conflict of interest in that the Commonwealth, on the basis of the validity of the codicil, has already received $90,000 on account of the estate's tax liability and that, if the codicil prevails, the Commonwealth is enriched taxwise whereas, if the codicil fails, the Commonwealth will lose taxwise. This argument lacks appeal. We are fully satisfied that the Attorney General has and will continue to hold *paramount* his duty as *parens patriae* and that he will not be influenced by any interest in tax gathering on the part of the Commonwealth.

ground; in so doing, the court below acted correctly. However, the order of the court then *dismissed* the appeal petition without giving Mosher any opportunity to amend the petition for the purpose of averring, in a concise and brief manner, the facts and circumstances upon which he based the averments of lack of testamentary capacity and undue influence. The dismissal of the appeal petition was too drastic under the circumstances and an opportunity to amend should have been granted. In dismissing the petition, the court below fell into error and its decree in this respect must also be reversed.

Mosher's appeal from the probate of the codicil in the court below was followed by several motions on his part seeking discovery by way of depositions and by the production and inspection of documents. The court below refused, in separate orders, such motions principally on the ground that they sought discovery in too broad a manner. At this time, we need not pass on the propriety of the court's action in this respect in view of our disposition of this matter by way of remand to the court below.

From a study of this record and the applicable case law, two conclusions are inevitable: first, that Mosher does have standing to appeal from the probate of the codicil and, second, that Mosher must aver in an amended appeal petition sufficient facts and circumstances to support his averments of lack of testamentary capacity and undue influence. Such conclusions compel that we remand the matter for further proceeding in the Orphans' Court of Erie County.

Since we are remanding this matter for further proceedings and since it is inevitable that, either for the preparation of pleadings or the preparation for and trial of the cause, further attempts at discovery will be made, it may not be amiss to point out that, since there is a pending action, the Orphans' Court has

the power to enforce discovery sought in an appropriate manner. (20 P.S. §2080.742; Sup. Ct. O.C. Rules, §3, Rule 6; *Cole v. Wells*, 406 Pa. 81, 91, 177 A. 2d 77). Nothing in this opinion shall be construed as a bar to the allowance of discovery if the matters sought are relevant to the issue of the cause. While "fishing expeditions" are not to be countenanced under the guise of discovery, requests for discovery must be considered with liberality as the rule rather than the exception.

The case at bar is one of grave concern and importance. The circumstances presented on this record are such as demand that *all* parties be given their "day in court". We in no manner presume to pass upon the merits of this controversy; we simply note that this record portrays a situation requiring on the part of the Orphans' Court the strictest of scrutiny that the rights of the "local charities" of Erie, of Myra Parkhurst, of Mosher and of all other parties concerned be fully protected.

Decree reversed and the matter remanded to the Orphans' Court of Erie County for proceedings consistent with the views expressed in this opinion.[14] Costs to abide the event.

---

[14] The contention of appellee as to prematurity of this appeal has been considered and dismissed.